F. W. HAMILTON ET AL., Respondents, v. AURORA FIRE INSURANCE COMPANY ET AL., Appellants.

15   59<br>35  266

### January 29, 1884.

AGENCY — NOTICE — INSURANCE. — If the agent's power extends only to forwarding applications and delivering the policies, and not to issuing policies of insurance, notice to him, after a delivery of the policy, of a violation of a clause therein forbidding additional insurance, is not notice to the company.

APPEAL from the St. Louis Circuit Court, THAYER, J.
*Reversed and remanded.*
BROWN & YOUNG, for the appellant.
NOBLE & ORRICK, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

This is a consolidation of two actions upon policies of insurance against loss by fire. One policy, for $1,500, was issued by the Aurora Fire and Marine Insurance Com-

pany, of Cincinnati, and the other, for $2,500, was issued by the Home Insurance Company, of Columbus, Ohio, both being upon a stock of goods owned by the plaintiffs, who were merchants residing in Deadwood, Dakota. By stipulation of counsel the two causes were heard by the same jury, upon the same testimony, and one transcript brings them both before this court, on appeal. Plaintiffs recovered the full amounts claimed, on both policies. The issues were substantially the same in the two cases, and, for greater clearness, we will here consider them as if the controversy concerned but one company.

The policy sued on contains this stipulation : " If the assured shall have, or hereafter make, any other insurance on the property herein insured, or any part thereof, without notice to and consent of this company in writing hereon, this policy shall be null and void." The defence relied on is that, notwithstanding this condition, the plaintiffs, at various times after the date of the policy, made additional insurance on the same property in other companies, without any notice to, or consent of the defendant. The plaintiffs meet this with an averment that due notice was given to, and the condition waived by the defendant, through its agent duly authorized for that purpose. The testimony and the instructions appearing in the record narrow the controversy down to the inquiry, whether the person referred to was such an authorized agent of the insurer, as would make the notice to him a compliance with the condition in the policy, and therefore binding on the defendant ?

J. B. Bennett, residing in St. Louis, was a general agent of the defendant, having authority to write, countersign, and issue policies, and to appoint local agents. L. C. Miller, a resident of Deadwood, was engaged in the business of procuring insurance in a number of companies for persons who made their applications through him. Whatever may have been the scope of his agency for other companies, it distinctly appears that he had no authority to issue a policy in

the name of the defendant. His practice was, to prepare the application, containing a description of the property to be insured, with all the representations, proposals, and guaranties required for the insurer's acceptance, and to forward the same to Bennett, at St. Louis, who would determine in what company, of those represented by him, the insurance should be effected, issue a policy accordingly, and transmit it to Miller for delivery to the insured, and for collection of the premium; from which Miller would deduct a certain commission, remitting thereupon the remainder to Bennett. Such was the course pursued in the present instance. It was shown that the subsequent and additional insurance in other companies was also obtained by the plaintiffs through the agency of Miller. But it did not appear that Bennett had any connection with those other companies, or that there was any communication with him in regard to the additional insurance.

In order to show the character of Miller's agency, and that his knowledge of the additional insurance was the knowledge of the defendant, there was introduced in evidence several written and printed communications from Bennett to Miller. One of these is a circular signed by Bennett, setting forth the resources and business facilities of his principal, the defendant, with its purpose of " prudently extending its agency business," and closing with the words : " Herewith you have blank for agency application."' This has no date. Three others were dated June 11, 1880. One was as follows : —

" J. B. BENNETT, GENERAL AGENT,
" NO. 11 INSURANCE BUILDING,
" SIXTH AND LOCUST STREETS,
"ST. LOUIS, MISSOURI, June 11, 1880.

" *Mr. L. C. Miller, Esq., Deadwood, D. T.:*

" DEAR SIR — We are in receipt of your application for the agency of the Home, of Ohio. Our supplies are being

prepared, and as soon as finished we will be ready to appoint our agents. Until then we will issue policies here, allowing you the usual commission of 15 per cent. We have facilities for placing lines in first-class companies, and are prepared to accommodate you to any extent, and will be pleased at all times to hear from you.

"Yours truly,

"J. B. Bennett, *G. Agent.*"

Another, similarly headed and signed, was the following : —

"Dear Sir — We transact business upon sound and enduring principles, pay fair losses promptly and pleasantly, appreciate and second the efforts of our agents heartily, and ask proper concert on their part, so as to promote the best interests of all concerned in the agency now intrusted to your care ; therefore, compliance with the following instructions and rules is confidently expected." Then follow requirements as to monthly reports, risks, rates, etc.

A third, having the same heading and signature, was as follows : —

"*L. C. Miller, Esq., Dakota Territory;*

"Should you need any surplus lines of insurance placed, or have any desirable business you want insured in solid companies, at fair rates, please send me application with the written form of policy, and I will promptly send you policies for same, allowing you customary commissions. An extensive experience of over thirty years enables me to so appreciate the growing requirements of this business to agents and others concerned, as to frequently render just the assistance needed in promoting desirable insurance transactions in a satisfactory manner. If you avail yourself freely of this offer you can make it a valuable auxiliary to your agency, by securing better lines and controlling more custom with less competition, labor, and responsibility to yourself. Soliciting your orders, I remain, yours truly."

The circuit court instructed to the effect that these com_ munications, together with proof that Bennett, as general agent for the defendant, sent them to Miller; that Miller applied to Bennett for an agency; that Miller, with the knowledge of Bennett, solicited insurances, made and forwarded applications to Bennett, received the policies and delivered them to parties assured, collecting the premiums and retaining therefrom a commission for his services, constituted Miller, in law, an agent of the defendant for the transaction of its business at Deadwood; and if, while continuing so to transact such business, Miller had knowledge of the additional insurances made subsequently to the issuing of the policy sued on, then such additional insurances constituted no defence against this action.

It is manifest on the face of the papers above copied, that Miller had no authority to execute a contract of insurance that would be binding on the defendant company, and that no such authority in him was supposed to exist, by any of the parties. Bennett informs Miller that the company is not yet ready to appoint agents. This is nothing less than a distinct refusal to make the desired appointment at that time. The references to Miller's agency, and the instructions applicable to that position, all bear the same date; and the reasonable inference is, that Bennett meant only to enable Miller to prepare himself with the requisite information in advance, for a proper discharge of his duties as agent, when he should thereafter be appointed. "Until then," it is emphatically noted, the policies will be issued only from Bennett's office, and not by Miller. No change of these relations appears, up to the issuing of the policy sued on, or, indeed, at any time afterwards. This was executed and delivered by defendant, through Bennett. Miller did not even countersign it. He appears in no connection with that instrument, except as a messenger by whom it was transmitted from Bennett to the plaintiffs. But, whatever may have been Miller's general position, it is certain that,

in this transaction, the plaintiffs never had a right to regard him as capable of issuing a policy, or of executing any binding contract of insurance, in the name of the defendant, and as its authorized representative.

In all cases analogous with the present, a liability or obligation consequent upon notice of any fact, depends upon an option in the party to be charged, whether to act, or not to act, with reference to the subject-matter of the notice. A being about to purchase a title from B, receives notice of an equity in C. He has an option to decline the trade, and so escape a liability to C, or to consummate it nevertheless, and to take all the risks of C's equity. Having chosen the latter alternative, he can not afterwards be heard to claim immunity from C's demand. And this results from the fact, and the time, of the notice. Without it, C's equity might have been unavailable against the title acquired by A; and such would still be the consequence, if the notice had come to A, only after the consummation of his purchase, when no option was left him to decline or to proceed. So, in the present case, if the defendant had notice of the additional insurances, when made, it had an option, under the contract, to decline a continuance of the risk and declare the policy forfeited, or to waive the conditions, both as to the written consent and the forfeiture, and so permit the assured to remain in the enjoyment of their security against loss by fire. Having, with this notice before it, made no objection to the additional insurances, but on the contrary, elected to continue the risk notwithstanding, the defendant can not be heard, when the risk has culminated in a loss, to claim immunity from the results of its own deliberate choice. It clearly appears from these principles, that the notice, to be effectual for such ends, must be received by one who is competent to act upon the option it presents. There must be a capacity to do, or not to do, accordingly as the party may be disposed to accept or to avoid the liability proposed by the notice. In the case be-

fore us, the act to be done or omitted involves a waiver of certain stipulations in a written contract; in other words, an alteration of the contract, to that extent. To do this, requires quite as high an authority as that which might make the contract. The defendant company might do either, of course, through any officer or servant empowered to bind it by original contract. But is it conceivable that a person who has no such authority, may yet bind the company by a waiver or alteration of its contract already made? We think not. The whole argument for the plaintiffs here concedes the limitation, that notice to an agent, in order to bind the principal, must affect a matter within the scope of the agent's authority. How can a waiver, or modification of the terms of a contract, be found within the scope of an agent's authority, who has never been empowered to make the same, or any like contract? The notice, in this case, was operative upon nothing, if not upon a waiver or modification of stipulations in the contract of insurance. It is sometimes said, that notice to an agent is notice to the principal, if the matter be such as to make it the agent's duty to notify the principal. But this only states in another form the proposition already considered. For the agent is under no duty to transmit a notice to his principal of a matter not within the scope of his agency. We think it is perfectly clear, that neither the making of a contract of insurance, nor the surrender of any rights under one, when made, was within the scope of Miller's authority, as shown in the testimony, to represent the defendant. His agency, such as it was, began with the making of the application and sending it to Bennett, and ended with his delivery of the policy to the plaintiffs. As to all that occurred after this, he had neither duty nor responsibility of any sort in connection with the defendant, so far as it might be affected by the policy sued on.

Our views are sustained by all the authorities we have been able to find, that bear directly upon the question at

issue. A proper distinction is taken — in cases where the agency is for forwarding applications and receiving and delivering the policies without any authority to issue them — between the effect of a notice of additional insurance, given to such an agent, when preparing the application, or transmitting it, and that of a similar notice given to him after the making and delivery of the policy. In the first case, the notice is binding on the insurer, because given to the agent while he is acting precisely within the scope of his agency. It is his duty to include in the application, or to send with it, information of every fact which may affect the danger or the desirableness of the proposed risk, to the insurer. But, in the second case, the contrary is true. In *Mellon* v. *Hamilton F. Ins. Co.* (17 N. Y. 609), Kane, an insurance broker, solicited the insurance, prepared and forwarded the application, received and delivered the policy to the insured, collected the premium, deducted his commission, as allowed by the company, and remitted the remainder. Afterwards, the insured procured, through Kane, in the same way, additional insurance in another company. This was held to impart no such notice as could affect the first insurer. Said Duer, J.: "In procuring the insurance, he (Kane) was the agent of the insured, and if, before the transaction was complete, he became for any purpose the agent of the defendants, that agency wholly ceased when he had delivered the policy to the assured, and had paid over to the company the premium which he had received. From this time there was no such relation between him and the defendants (insurers) as could make it his duty to communicate to the company his personal knowledge of a subsequent insurance, or could justify third persons in believing that this duty was imposed on and would be discharged by him. We think it would be extravagant to say that the knowledge which, in a separate transaction, he acquired in a further insurance, was alone sufficient to affect the company with notice of the fact." The case furnishes an exact par-

allel with the one before us.   The standing arrangement, if any was effected by Bennett's correspondence with Miller, amounted at last to the conferring of no broader agency powers upon Miller than were held by Kane in the above case.   In *Amer. Ins. Co.* v. *Luttrell* (89 Ill. 314), the soliciting agent's knowledge of other insurance was held to be binding on the company, for the sole reason that he had such knowledge at the time of making the application. *McEwen* v. *Montgomery Co. Mut. Ins. Co.* (5 Hill (N..Y.), 101), was decided similarly on precisely the same grounds. The only case in which such knowledge by a soliciting agent acquired after the issuing of the policy, was held to be the knowledge of the insuring company, is *Schomer* v. *Hekla F. Ins. Co.* (50 Wis. 575).   The decision in that case was expressly founded on a peculiar statute of Wisconsin, which made every solicitor of insurance a general agent, for all purposes, of the company responding to his application. The court declares that the statute, in this particular, changes the general rule of law.   Our conclusion here is thus sustained, even by an adverse decision.

On the other hand, the decisions are quite numerous in which it is held, that notice to an agent of further insurance is notice to his principal, the first insurer, expressly and exclusively because the agent, in each case, has authority to issue policies, and may therefore exercise the corresponding power to waive a right which the policy secures.   The rule is applied, in like manner, to the waiver of conditions in the policy concerning the payment of premiums and other matters.   *Young* v. *Hartford Ins. Co.*, 45 Iowa, 377 ; *Hotchkiss* v. *Germania F. Ins. Co.*, 5 Hun, 90 ; *Sheldon* v. *Atlantic F. & M. Ins. Co.*, 26 N. Y. 460 ; *Farmers' Mut. Ins. Co.* v. *Taylor*, 73 Pa. St. 342.   Finally, in *Mitchell* v. *Lycoming Mut. Ins. Co.* (51 Pa. St. 402), it is expressly held that, " an agent of an insurance company, whose duty is to take surveys, receive applications for insurance, examine the circumstances of a loss, approve assignments, and

receive assessments, is not authorized to accept notice of over-insurance, or waive its consequences." The agency powers thus enumerated are far greater and more general than those which Miller either claimed or exercised in the present case.   Said Agnew, J. : " Now it is very clear none of these powers authorize an agent to accept notice of over-insurance, and visit the company with a waiver of its consequences.   The knowledge of a mere agent unauthorized to represent the company beyond the specific powers committed to him, can not be the ground of estoppel in a matter unconnected with the exercise of his powers.   This can take place only when the knowledge lying at the foundation of the estoppel comes home to those officers who exercise the corporate powers of the company, or to an agent whose powers relate to the very subject out of which the estoppel arises."   See also *Lange* v. *Lycoming Ins. Co.*, 3 Mo. App. 591.

We are of opinion that the circuit court erred in its instructions as to the effect of Miller's knowledge of the over-insurance, acquired by him after the delivery of the policy, and the judgment will therefore be reversed, and the cause remanded.   All the judges concur.