# Queen Insurance Co. v. Young.

*Action on Policy of Insurance against Fire.*

1. *Purchase of goods by married woman, on credit; insurable interest in such goods.*—A married woman, though under the disability of coverture, may purchase goods on credit for the purpose of carrying on a mercantile business, unless her husband dissents; and she acquires by such purchase an insurable interest in the goods, if she has a separate estate which she can charge by the contract.

2. *Concealment (or failure to disclose) fact of coverture, as affecting policy; uncommunicated instructions of agent.*—The failure of a married woman, when taking out a policy of insurance in her own name on a stock of goods, to disclose the fact of her coverture, is not the concealment of a fact material to the risk, although the agents of the insurance company were forbidden to take policies on stocks of goods in the hands of married woman ; nor is she affected by such instructions to the agent, when not communicated to her.

3. *Forfeiture of policy by second or additional insurance without consent.*—If the insured effects additional valid insurance on the property, in violation of an express condition in the first policy, without the writ-

[Queen Insurance Co. v. Young ]

ten consent of the insurer as required, this is a breach of the condition, and operates a forfeiture of the policy, unless such forfeiture is waived.

4. *Waiver of forfeiture; notice to agent, as notice to principal; adjustment of loss, as evidence of waiver.*—The waiver of a forfeiture, though operating in the nature of an estoppel, may be created by acts, conduct or declarations, which are not sufficient to create a technical estoppel; but knowledge or notice of the breach is an essential element of a waiver, and notice to the soliciting agent of the insurance company, who was only authorized to take applications, receive premiums, and deliver policies when signed by the proper officers, is not notice to the company; nor will a waiver be implied because the adjuster of the insurance company, having notice of the breach, afterwards entered into an agreement for the appointment of arbitrators to appraise the property lost or damaged, in which it was expressly stipulated that such agreement "is without reference to any other questions within the terms and conditions of the contract;" the policy itself also providing that such arbitration and appraisement "shall not determine the validity of the contract, nor the liability of the insurance company, nor any other question except only the amount of loss or damage."

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by Mrs. Effie Young, a married woman, against the Queen Insurance Company of Liverpool, a foreign corporation; and was founded on a policy of insurance on a stock of goods against loss or damage by fire, which the plaintiff had effected in her own name with the defendant. The policy was dated November 13, 1886, for $2,000, and the risk continued for one year. The stock of goods was badly damaged by fire in March, 1887, and the action was brought on the 20th September, 1887. The general issue was pleaded, and seven special pleas, to each of which demurrers were interposed, assigning numerous grounds of demurrer, some of them setting up a breach of the conditions of the policy, and others denying plaintiff's insurable interest in the goods. There were numerous replications, demurrers thereto, and rejoinders; but the main points of contest, as evolved from the pleadings, were—1st, whether plaintiff had an insurable interest in the goods; 2d, whether the policy was affected by her coverture; 3d, whether the policy was avoided by a second policy taken out on the same stock of goods, the adjusted loss on which had been paid; 4th, whether the defendant had knowledge of the second insurance, and had waived the forfeiture. Under the rulings of the court on the pleadings and evidence, and in charges given and refused, the plaintiff had a verdict and judgment for $2,100; and these several rulings, 49 in number, are here assigned as error. The opinion states the material facts bearing on the points decided.

TOMPKINS, LONDON & TROY, for appellant.—(1.) The plaintiff had no insurable interest in the goods, having bought them on credit during coverture.—*Blythe v. Dargin*, 68 Ala. 370; *Vance v. Wells*, 6 Ala. 737; 1 Parsons Contracts, 379; *Smith v. Plomer*, 15 East, 607; *Perry v. Insurance Co.*, 11 Fed. Rep. 478; *Stockdale v. Dunlap*, 6 Mees. & W., 224; *Redfield v. Insurance Co.*, 56 N. Y. 356; *Helmetag v. Miller*, 76 Ala. 183; W.oods on Insurance, vol. 1, p. 688, note; 81 Ala. 320. It was averred and proved, also, that while seeking to enforce her claim against this defendant for the loss of these goods, she repudiated and denied her liability for them to the merchants from whom she purchased them, setting up her coverture in defense. (2.) The plaintiff concealed the fact of her coverture from the defendant's agent, by whom the policy was issued, when she was bound to know that he was forbidden to make contracts with married women. *Cummins v. Beaumont*, 68 Ala. 204; *Burks v. Hubbard*, 69 Ala. 379; *Howe v. Ashley*, 60 Ala. 498; *Clark v. Taylor*, 68 Ala. 453. (3.) The policy contains an express stipulation, that it shall become void if the assured make or procure "any other insurance, *whether valid or not*," without the written consent of the defendant indorsed thereon. The purpose and object of the stipulation against second or additional insurance is to guard against a motive or inducement on the part of the assured to destroy the insured property, or connive at its destruction; and this motive may arise from a second insurance which is in fact invalid, if the insured believes it valid; and he would not be likely to effect it, if he knew or thought it was invalid. Whether the second insurance be valid or invalid, is immaterial, if the assured believed it to be valid, as he must have done. "Whether valid or not," as the words are used in the policy, was intended to guard against any question which might arise as to the validity and effect of the second insurance, in view of a slight conflict of the authorities construing policies which did not contain those words.—*Suggs v. Hartford Insurance Co.*, 3 S. E. Reporter, 732, decided by the Supreme Court of No. Carolina; *Continental Insurance Co. v. Hulman*, 34 Amer. Rep. 122; *Phœnix Ins. Co. v. Lamar*, 55 Amer. Rep. 764; *Robinson v. Fire Asso.*, 29 N. W. Rep. 521, Michigan; *Cassity v. N. O. Ins. Asso.*, 3 So. Rep. 138, Mississipi; 35 Mich. 395; 43 Am. Rep. 216, 221; *Allen v. Mer. Ins. Co.*, 31 Am. Rep. 243; 41 *Ib.* 656; *Sanders v. W. Ins. Co.*, 86 N. Y. 554; 42 Geo. 457; 22 N. Y. 402. (4.) Whether the second insur-

[Queen Insurance Co. v. Young.]

ance was valid or invalid is immaterial, since the parties have recognized its validity, and have adjusted and paid the loss under it.—*Carpenter v. Prov. Ins. Co.*, 16 Peters, 495; *David v. H. Ins. Co.*, 13 Iowa, 69; *Hubbard v. H. Ins. Co.*, 11 Amer. Rep. 125; 14 N. Y. 79; 22 N. Y. 402. (2.) No waiver of this forfeiture was shown, or could be inferred from the evidence.—*Hoxie v. Home Ins. Co.*, 85 Amer. Dec. 240; *Ripley v. Aetna Ins. Co.*, 86 Amer. Dec. 362; *Donahue v. Ins. Co.*, 56 Vt. 374; *Patrick v. Farmers' Ins. Co.*, 43 N. H. 621; *Hunt v. Barfield*, 19 Ala. 117; *Burkham v. Daniel*, 56 Ala. 604; 2 Woods on Insurance, § 401; *Wailes v. Neal*, 65 Ala. 59; *Steele v. Adams*, 21 Ala. 534; *Whelan v. McCreary*, 64 Ala. 319; *Reid v. Bank of Mobile*, 70 Ala. 199; 64 N. Y. 469; 85 N. Y. 278; 98 Penn. St. 384; 15 Mo. App. 59; 81 N. Y. 449; 43 N. H. 621; May on Ins., §§ 505–07; 4 Bush, Ky. 242; 66 Texas, 235. (6.) On all the evidence adduced, the court ought to have given the general affirmative charge in favor of the defendant.

WATTS & SON, *contra.*—(1.) To constitute a breach of a stipulation against subsequent insurance without consent, the subsequent insurance must be valid.—*Gee v. Ins. Co.*, 55 N. H. 65; *Phœnix Ins. Co. v. Lamar*, 106 Ind. 513; *Jackson v. M. F. Ins. Co.*, 23 Pick. 418; *Thomas v. M. F. Ins. Co.*, 119 Mass. 121; 4 Allen, Mass. 217; 41 N. H. 170; 6 Cush. Mass. 342; 2 Watts & S. (Penn.) 506; 35 Ohio St. 189; 31 Gratt. 176; 6 Mo. Ap. 121; 37 Me. 137; 65 Me. 368; 43 Mo. 573; 4 Zabr. N. J. 447; 5 Gray, Mass. 52; 3 Dill. 480; 28 Amer. Dec. 125, note; 33 Iowa, 325; Flanders on Fire Insurance, 49; 53 Amer. Dec. 48. (2.) It was not necessary that the consent should be in writing, nor even that an express consent should be shown.—*Life Ins. Co. v. Bledsoe*, 52 Ala. 538; *P. & A. Ins. Co. v. Young*, 58 Ala. 481; 8 Lea, Tenn. 513; 53 N. H. 538; 4 Zabr. N. J. 447; 27 Minn. 393; 65 Iowa, 454; 70 Iowa, 91, 600; 4 Hun, N. Y. 413; 25 Conn. 465; 112 Ill. 68; 55 Mich. 141; 51 N. Y. 117; 22 Conn. 575; 39 Amer. Rep. 584. (3.) The plaintiff's coverture was a fact not material to the risk, and she was not bound to disclose it.—58 Ala. 484; 13 Wall. 234. That a married woman may buy goods on credit, and thereby acquire a title good against all the world except her husband's creditors, see *Wilder v. Abernethy*, 54 Ala. 644; *Sharp v. Sharp*, 76 Ala. 312. Defendant's instructions to its agents, not to insure the property of married women, not having

been communicated to plaintiff, can not affect her rights. 13 Wall. 234. (4.) The forfeiture, if any, was waived by the subsequent conduct of the defendant's agents, through whom its business was necessarily transacted.—55 Mich 141; *Fire Ins. Co. v. Allen*, 80 Ala. 571; 2 Stew. 479, 520; *Roberts v. Brownrigg*, 9 Ala. 106: *Griggs v. Woodruff*, 14 Ala. 9; *Dill v. Camp*, 22 Ala. 249; *Stewart v. Cross*, 66 Ala. 22; 54 Cal. 422; 67 Cal. 67; 62 Geo. 195; 70 Iowa, 91, 600; 112 Ill. 68; 108 Ind. 270; 39 Mich. 54; 57 Mich. 135; 60 Mich. 420; 81 N. Y. 419; 80 N. Y. 108; 53 Wisc. 585; 132 Mass. 489; 59 Texas, 509; 66 Texas, 235; 65 Iowa, 458; 10 West Va. 572, 580; 14 R. I. 247; 117 Penn. St. 460; 51 Md. 512; 69 Iowa, 658.

CLOPTON, J.—The action is brought by appellee, on a policy insuring a stock of goods against loss or damage by fire. On the evidence, there can be no controversy as to the destruction of the goods, or their value. It is only necessary to consider the questions arising on the special defenses. These are: 1st, want of insurable interest; 2d, concealment of a fact material to the risk; and, 3d, forfeiture of the policy.

The averments of the plea, setting up want of insurable interest, are, that plaintiff was a married woman, under the disabilities of coverture, at the time of the issuance of the policy, and has continuously remained such; that she purchased the insured goods on a credit, for the purpose of carrying on a mercantile business, and asserts that no interest or title passed to her by the purchase, and has repudiated, and still repudiates and denies her liability to pay for the goods. It is contended that the contract of purchase is absolutely void and inoperative to pass an insurable interest.

The statutes creating the separate estates of married women, in force at the time of the issuance of the policy, having been construed not to confer capacity, nor to enlarge the common-law capacity of the wife, to acquire property by purchase on credit, the character and operation of such contract of purchase must be determined by the principles of the common law. The authorities are in conflict on the question of the wife's power to purchase on credit, when she has no separate estate which she can bind; but they hold, quite uniformly, that she may make a valid purchase of other property on credit, when she is possessed of a separate estate, which she can charge by the contract of purchase, and

such property, when purchased, becomes her separate estate. *Wilder v. Abernethy*, 54 Ala. 644, is not inconsistent with this doctrine. That case was a trial of the right of property, between a creditor of the husband, and the wife as claimant, in which the legal title only was involved. The goods were purchased on credit by the husband, for the purpose of trade in the name of his wife; passed into, and continued in his possession, until they were seized by the sheriff under an execution against him, and were unpaid for at the time of the levy. It is said: "The goods having been purchased only on credit of the wife, and the contract of purchase not being a charge upon the separate estate created by the deposit by her father with her husband (the only separate estate she is shown to have had), no legal title to the goods passed to her." Manifestly, the decision would have been otherwise, had Mrs. Abernethy possessed a separate estate on which the contract of purchase was a charge. The omission of the plea to aver that the plaintiff did not possess such separate estate, is an answer to its sufficiency, if there were no other.

The capacity of a married woman to purchase property on credit, with the assent of her husband, though she may have no separate estate, must be regarded as settled in this State. It has been repeatedly held, that at common law the wife may make, during coverture, a valid purchase on credit of real estate, with the assent of the husband, or, if without his consent, subject to his disaffirmance; and if he does not dissent, such purchase creates in the wife a legal or equitable interest, as may be the nature and effect of the transaction, which becomes her separate estate.—*Marks v. Cowles*, 53 Ala. 499; *Prout v. Hoge*, 57 Ala. 28; *Sharp v. Sharp*, 76 Ala. 312. There is nothing in the character or qualities of personal property which calls for the application of a different rule. Though a married woman can not, at common law, bind her person by a contract of purchase, if the vendor is willing to risk her voluntary payment, his transfer will be valid against all persons, unless it may be the creditors of the husband.—*Knapp v. Smith*, 27 N. Y. 277; Kelly on Con. of Mar. Wom. 160.

2. The second plea avers, in addition to the foregoing facts, that the plaintiff concealed the fact of her coverture, and that the agents of defendant were forbidden to issue policies of insurance on stocks of merchandise in the hands of married women. It follows from what we have said, that

the coverture of plaintiff is not a fact material to the risk. The agents of defendant were apparently clothed with general powers to solicit and take applications for insurance from any and all persons. Private instructions to such agent, uncommunicated to the plaintiff, will not affect her rights.

3. The policy of insurance contains the condition, that it shall be and become void, in case the assured "shall now have, or. hereafter make or accept, any other insurance, whether valid or not, on any of the property above described, without the written consent of the company indorsed hereon." The evidence indisputably shows, that the plaintiff subsequently accepted a valid policy of insurance on the same stock of goods, from the Hibernia Insurance Company. The agent of the latter company, who issued the policy, was informed of the first insurance, and embodied in the policy a permit for additional insurance, and informed the plaintiff that she had to give defendant notice of the second insurance. The amount due on this policy has been paid. The second insurance being valid, we are relieved of the necessity of considering the question, so elaborately argued by counsel, whether accepting *invalid* additional insurance would avoid the contract. The court held, and properly held, that procuring additional *valid* insurance, without the consent of defendant, was a breach of the condition of the policy. Such additional insurance having been taken and accepted without notice to the defendant, the contract is avoided, unless the company has waived the right to claim the forfeiture, which the plaintiff insists has been done.

4. On breach of the condition and forfeiture of insurance, the defendant had the election to avoid the policy, or waive its right to claim the forfeiture. Conditions in a policy of insurance, limiting or avoiding liability, are strictly construed against the insurer, and liberally in favor of the assured. Though a waiver may be in the nature of an estoppel, and maintained on similar principles, they are not convertible terms. The courts, not favoring forfeitures, are usually inclined to take hold of any circumstances which indicate an election to waive a forfeiture. A waiver may be created by acts, conduct, or declarations, insufficient to create a technical estoppel. If the company, after knowledge of the breach, enters into negotiations or transactions with the assured, which recognize and treat the policy as still in force, or induces the assured to incur trouble or expense, it will be regarded as having waived the right to claim the

[Queen Insurance Co. v. Young.]

forfeiture. But notice or knowledge of the breach is essential to a waiver. .If the defendant did not have notice of the forfeiture until after the destruction of the goods, some affirmative act or conduct is requisite. In such case, "a waiver can not be inferred from mere silence. It (the company) is not obliged to do or say anything to make the forfeiture effectual. It may wait until claim is made under the policy, and then, in denial thereof, or in defense of a suit commenced therefor, allege the forfeiture." The mere omission of defendant, if it did not receive notice of the additional insurance until after the destruction of the goods, to repudiate and annul the policy, and acquaint the plaintiff that it claimed the forfeiture, is not, as matter of law, a waiver of right to claim it.—*Titus v. Glenn Falls Ins. Co.,* 81 N. Y. 410.

On proof that the local soliciting agent of defendant went to the place of the fire on the morning after it occurred, in company with the agent of the Hibernia Insurance Company, and with him examined into the condition of the goods, observing that he would have to telegraph for an adjuster, the court instructed the jury, that they could look to these facts, in connection with the other evidence, to determine whether or not the defendant, through its agents, elected to treat the policy as subsisting, after knowledge of the second insurance, and that notice to the soliciting agent was notice to the company. Notice to an agent is notice to the principal, only when it is acquired while engaged in the business of the principal, within the scope of his authority, and respecting a transaction then depending.—*Hill, Fontaine & Co. v. Helton,* 80 Ala. 528. On this principle, notice to the soliciting agent, while receiving the application for insurance, of a material fact or inaccuracy in the application, is notice to, and binds the company.—*Peid. & Ar. Ins. Co. v. Young,* 58 Ala. 476. The evidence shows that a soliciting agent has nothing to do with settling the loss. An agent, who is only authorized to solicit and take applications for insurance, receive the premiums, and deliver the policy after having been signed by the proper officers, has no authority, express or implied, to waive a breach of the condition of the policy relating to additional insurance.—*Bush v. Westchester Fire Ins. Co.,* 63 N. Y. 531; *Bartholomew v. Mer. Ins. Co.,* 25 Iowa, 507; *Harrison v. City Fire Ins. Co.,* 9 Allen, 231; *Hamilton v. Aurora Fire Ins. Co.,* 15 Mo. App. 59; *Cleaver v. Trader's Ins. Co.,* 32 N. W. Rep. 560; *Insurance Co's. v.*

*Souby*, 60 Miss. 302; *VanAllen v. Farmer's Ins. Co.*, 64 N. Y. 469; May on Ins. § 138.

A few days after the fire, Hawks, an adjuster representing both companies, came, and, by agreement with plaintiff, an appraisement of the value of the goods was made, by persons selected in pursuance of the terms of the policy. The adjuster, having been informed that there was a second insurance, entered into an agreement with plaintiff for the selection of arbitrators to make the appraisement. The agreement provides: "It being agreed and understood that this appointment is without reference to any other question within the terms and condition of the insurance contract as expressed in the policy." The policy also contains a provision, that the appraisement of the value of the property by arbitrators chosen by the parties, "shall not determine the validity of the contract, nor the liability of this company, nor any other question except only the amount of such loss or damage." There was evidence tending to show that Hawks promised to pay the loss. Hawks was not the generally retained adjuster of defendant, but was employed in particular cases. Special authority to an agent to adjust loss and damage, does not confer authority to bind the company by a promise to pay the loss. It may be, that if the company, with knowledge of the forfeiture, had authorized an agent to adjust the loss, a liability and a promise to pay would ordinarily be implied; but the implication may be rebutted, either by the terms of the policy, or by an agreement reserving the question of liability. The validity of the agreement is not impeached. There is no pretense that its contents were concealed, or misrepresented. The plaintiff signed it on the opinion and advice of a trusted friend. An agreement that the adjustment shall be made "without reference to any other terms and conditions of the insurance contract," is a reservation of the question of liability. Such agreement can not be construed as more than a promise to pay the loss in the event the company is liable. Waiver of a right to claim a forfeiture, for a breach committed before the loss of the property, is not the legal result of an adjustment of the loss under the policy and agreement.—*Whipple v. No. B. & M. Fire Ins. Co.*, 11 R. I. 137; *Phoenix Ins. Co. v. Lawrence*, 4 Met. (Ky.) 9; *Jewett v. Home Ins. Co.*, 29 Iowa, 562; May on Ins., § 138. The charge of the court as to the effect of the agreement is in accord with these views.

There being no other evidence of notice to defendant of

[Sullivan v. Rabb.]

the second insurance than stated above, the affirmative charge requested by defendant should have been given.

Reversed and remanded.

[The following cases in this volume were decided after Judge MCCLELLAN became a member of the Court.]