## ORDER OF RAILWAY CONDUCTORS OF AMERICA v. QUIGLEY.

### No. 4715.

Court of Civil Appeals of Texas. Texarkana.

May 14, 1935.

Rehearing Denied May 30, 1935.

Grimm, Elliott, Shuttleworth & Ingersoll, of Cedar Rapids, Iowa, Arnold & Arnold, of Texarkana, Ark., and Wm. Hodges, of Texarkana, Tex., for appellant.

King, Mahaffey, Wheeler & Bryson and N. L. Dalby, all of Texarkana, Tex., for appellee.

HALL, Justice.

On February 22, 1933, appellee instituted this suit against appellant for the sum of $2,000, penalty, and attorney's fee, on a certificate of insurance issued to C. M. Quigley.

C. M. Quigley, husband of appellee, was a conductor on the Texas & Pacific Railway, and as such was a member of the Order of Railway Conductors of America, appellant. He carried a policy of insurance provided by appellant for its members from 1906 until August 1, 1931. This insurance was carried under the mutual assessment plan. On August 1, 1931, the appellant changed its plan of insurance from assessment to legal reserve, and all the members of the order were given an opportunity of subscribing for insurance under the changed or new plan in any amount not to exceed $5,000, upon the payment of certain premium payable either annually, semiannually, quarterly, or monthly, without medical examination. Under the old assessment plan, every member of the order was required to carry a policy of insurance, but under the new plan it was optional with the members. Appellant sent to every member of its order in good standing a printed card for the purpose of ascertaining those who desired insurance under the new plan and the amount thereof. C. M. Quigley received such card and first declined any insurance under the new plan. Later, however, in October, 1931, he wrote the company that he desired to subscribe for a policy for $2,000 under the new plan, and inclosed a post office money order in the sum of $10.37 for one monthly premium. This monthly premium was to be applied as the August, 1931, payment on his policy of insurance under the new plan. No further payments were made by Quigley or his wife or by any other person in his behalf. A certificate of insurance issued by appellant was delivered to C. M. Quigley on a date between the first and 15th of February, 1932. In this policy appellee was made the beneficiary.

The appellant collected certain dues from its membership which constituted a mutual aid fund which was to be paid out upon proper application and proof to disabled and indigent members and their families, and from said fund maintained a home for the use and benefit of the same classification of membership. The headquarters of appellant is at Cedar Rapids, Iowa. It has a lodge system with ritualistic work; its local lodges being known as divisions. One of its divisions is located at Bonham, Tex., of which C. M. Quigley was a member in good standing at the date of his death. C. M. Quigley became disabled in the early part of May, 1931, and his condition grew gradually worse until death resulted on May 17, 1932. Proof of death was timely submitted to appellant at its headquarters in Cedar Rapids, and payment of claim was refused. It was a contention of the appellee, plaintiff below, in the trial court, that Quigley, coming in the classification of indigent member, was entitled to payments out of the mutual aid fund maintained by the order for such members, and that these payments, being in the possession of the appellant and due to Quigley, should have been applied to the premiums on his certificate of insurance in the insurance department of the same organization. It was further insisted by appellee in the court below that the policy of insurance

dated August 1, 1931, and delivered by the appellant to Quigley on a date between the 1st and 15th of February, 1932, constituted a waiver by appellant of all premiums due by Quigley from September 1st up to and including the month of February, 1932. Among other things, the appellant insisted in the trial court that the policy had lapsed for nonpayment of dues, and hence it was not liable for any amount under and by virtue of the policy issued by it to Quigley, and also denied the allegation of appellee to the effect that Quigley's dues should have been paid by the mutual aid department of appellant. The case was tried to the court without a jury, and judgment was rendered for appellee in the sum of $1,906.67, from which appellant prosecuted its appeal to this court.

Upon the trial of this case, certain letters were introduced from appellee to the appellant in which she stated the physical and financial condition of Quigley. The testimony was to the effect also that she made similar statements to the officers of the local division at Bonham, Tex., and it was shown that one of the members of the local division requested of the appellant an application blank for Quigley to fill out for the purpose of securing aid from its mutual aid department. This was received by the local division a short time before Quigley's death, but was never executed. The evidence discloses that shortly after the delivery of the policy in the early part of February Mrs. Quigley, appellee, addressed a letter to appellant in which she detailed the physical and financial condition of C. M. Quigley. She received an answer to this letter from appellant dated February 17, 1932, stating, in substance, that the policy theretofore recently issued to Mr. Quigley for $2,000 had lapsed for nonpayment of dues, and that, in order for him to be reinstated in the order, it would be necessary for him to stand a medical examination.

The trial court filed lengthy findings of fact and conclusions of law which on account of their length will not be copied in this opinion. Numerous bills of exceptions are brought forward complaining of the action of the trial court in overruling certain exceptions to appellee's pleading, and introduction of testimony, and certain of his findings of fact and conclusions of law. The main issues, however, in this case as stated by appellant in its brief are:

"First. Appellant contends that only one premium, that for August, 1931, having been paid by the insured prior to his death on May 17, 1932, the policy had lapsed and was not enforceable.

"Second. Appellee contends that the insurance had not lapsed because the appellant had in its hands sufficient relief funds to which the insured was entitled, which could and should have been applied to the payment of his monthly premiums as they became due.

"Third. Appellee further contends that the delivery of the policy to the insured in February, 1932, constituted a waiver of forfeiture of the insurance because of the nonpayment of premiums due prior to March 1, 1932; that a notification from the appellant's secretary that the policy had lapsed relieved the insured of the obligation to pay any further premiums after February, 1932.

"Fourth. In reply appellant contends that under the laws of the defendant Order appellee was not entitled to any relief funds until after he had applied for same in the manner prescribed by the Relief Fund Board, and that the undisputed evidence shows that no such application was ever made.

"Fifth. Appellant also contends that the delivery of the policy under the circumstances shown by the record was not a waiver of the forfeiture of the insurance and that the notification given by the secretary that this policy had lapsed was not a repudiation of a policy then in force."

The question we will discuss first is: Was the delivery by appellant of its certificate of insurance to C. M. Quigley, husband of appellee, in the early part of February, 1932, a waiver of its right to forfeit the policy on account of failure of Quigley to pay the monthly premiums, accruing before the date of delivery? In our opinion, this question should be answered in the affirmative. On the date when the appellant delivered this policy to Quigley, it knew that he had not paid the premiums for the months of September, October, November, and December, 1931, and of January and February, 1932, and with full knowledge of this fact, and with notice of the physical and financial condition of Quigley as reflected in the letters of Mrs. Quigley to appellant, it delivered its policy of insurance to Quigley. It had the right, if it desired, to waive any provision in the policy of insurance which was inserted therein for its benefit. It was not required to deliver the policy when it did because Quigley was on the date of delivery in arrears with several monthly premiums. In the case of Equita-

ble Life Assurance Society v. Ellis, 105 Tex. 526, 147 S. W. 1152, 1157, 152 S. W. 625, Judge Phillips of the Supreme Court states the rule with reference to waiver as follows: "It was forcibly emphasized in argument by counsel that Ellis was at no time misled by the company, and, although the company was endeavoring in this negotiation to provide a way for the continuance of the insurance, at no time did he comply with any of its proposals but at all times refused to act upon any of them. That he was not misled at any stage of the negotiation would be a conclusive argument were the question before us merely one of estoppel. But the question here is one of waiver, and it was not necessary for Ellis to have been misled for a waiver of the forfeiture to be accomplished. The issue of waiver is not to be determined by what Ellis did or omitted to do. It should be considered only in the light of what the company did. Ellis had no power to waive the forfeiture, and his conduct or mental condition could have had no probative force upon the question as to what the company did or intended to do, or upon the effect to be given its action. It alone had the power to waive. Its action alone could constitute a waiver. Waiver is essentially unilateral in its character; it results as a legal consequence from some act or conduct of the party against whom it operates; no act of the party in whose favor it is made is necessary to complete it. It need not be founded upon a new agreement or be supported by a consideration, nor is it essential that it be based upon an estoppel."

To the same effect is the case of Queen Ins. Co. v. Young, 86 Ala. 424, 430, 5 So. 116, 118, 11 Am. St. Rep. 51. Thus it is our opinion that the trial court committed no error in holding that "the issuance and delivery of the certificate of insurance sued upon to C. M. Quigley after February 1, 1932, when the premiums for September, October, November, and December, 1931; and January, and February, 1932, were due and unpaid, the defendant order waived the forfeiture or lapse of said insurance on account of the failure of said C. M. Quigley to pay said premiums and that said certificate would remain in full force and effect until March 1, 1932, and for thirty days thereafter without the payment of any further premiums."

The second paragraph of the trial court's conclusions of law is as follows: "I conclude as a matter of law, that the defendant Order of Railway Conductors of America, having repudiated said certificate and declared the same lapsed at a time when the same was in full force and effect and requiring of C. M. Quigley a medical examination which would have shown him a non-insurable risk as a condition precedent to renewing same could not afterwards forfeit the same for a failure of C. M. Quigley to pay premiums thereafter accruing prior to the date of his death, and that said certificate was a binding contract in full force and effect from and after the date of its delivery until the date of the death of C. M. Quigley on the 17th day of May, 1932."

We are of the opinion that the trial court was correct in its conclusions of law above set out. After the appellant had repudiated the contract, it would have been an idle gesture on the part of Quigley, in his then condition of health, which was known to appellant, to apply for reinstatement, because it would have been impossible for Quigley to have passed a medical examination. The facts indicate that he was suffering with tuberculosis, from which disease he died within sixty days. At the time that the appellant repudiated the contract by declaring the policy lapsed, said policy of insurance was in full force and effect by virtue of the waiver by appellant of the payment of premiums, and it is our opinion that he would not be required to do the useless thing, or to try to do the impossible thing. As said in the case of National Life Ins. Co. of United States v. Eggleston (Tex. Civ. App.) 195 S. W. 942, 944:

"The second assignment is that the failure to pay or tender payment of the premium notes forfeited or canceled the contract. The original policy contained a clause providing for such forfeiture, and the application for the reduction contained the provisions that the conditions of the policy are to remain unchanged except for the reduction in amount. It is admitted that no tender of payment of the notes was made. So, if the company is not estopped by its subsequent acts as contended by appellee, it has presented a good defense to a recovery.

"The rule is that, when either party to a contract gives notice to the other that he will not comply with its terms, the other need not in action thereon allege or prove tender of performance. Brown v. Binz [Tex. Civ. App.] 50 S. W. 483; Gray v. Smith, 83 F. 824, 28 C. C. A. 168." First Texas Prudential Ins. Co. v. Ryan (Tex. Civ. App.) 48 S.W.(2d) 750.

The rule is also stated in 32 C. J. § 544, p. 1307, as follows: "Payment or tender of payment may be excused where, before the

time therefor, the company has repudiated the contract, or by a claim of forfeiture or otherwise has indicated that the tender would be of no avail, as where the company has made an excessive demand and insisted that nothing less will be taken as performance."

Therefore it is our opinion that the trial court correctly held that the policy of insurance issued by appellant to Quigley on a date between the 1st and 15th of February, 1932, was, by virtue of the waiver of the premiums due by Quigley to appellant, and the repudiation of said contract of insurance on February 17, 1932, while same was in full force and effect, a binding obligation on the appellant on the date of the death of C. M. Quigley, to wit, May 17, 1932. These conclusions, in our judgment, render unnecessary a discussion of the other propositions brought forward in this record.

Therefore the judgment of the trial court is affirmed.