## FRANCO et al. v. NEW YORK LIFE INS. CO.
### No. 6200.

Circuit Court of Appeals, Fifth Circuit.
Nov. 17, 1931.

Rehearing Denied Dec. 14, 1931.

Richard T. Rives and Thomas B. Hill, Jr., both of Montgomery, Ala., for appellants.

H. F. Crenshaw, of Montgomery, Ala., for respondent.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

## WALKER, Circuit Judge.

Within two years after the respective dates of issue, May 24, 1928 and May 29, 1928, of two life insurance policies issued by appellee to the appellant Abraham Franco, the appellee filed its bill in equity for the cancellation of those policies because of the falsity of the insured's answers to three questions contained in the written applications addressed to appellee and signed by the insured, a copy of one of which was attached to and made part of each of the policies delivered to and retained by the insured; those questions and the answers thereto being:

"7. (D) Have you been found to have a high blood pressure? Answer: No.

"8. Have you consulted a physician for or suffered from any ailment or disease of * * * (B) the heart, blood vessels or lungs? Answer: No.

"9. What physician or physicians, if any, not named above have you consulted or been examined or treated by within the past five years? Answer: No."

The bill contained allegations to the following effect: That each of said policies was executed by appellee and delivered to the insured in reliance upon the statements and representations contained in said applications; that all of the answers to those questions were false and known by the insured to be false at the time they were made, in that, in January, 1928, before those questions were asked and answered, the insured had been found by a named physician to have high blood pressure and had consulted that physician for a disease of the heart or blood vessels; that the matters and things so misrepresented by said false answers increased the risk of loss under the policies issued; that appellee was not informed of the falsity of those answers until during the month of July, 1929, when it received a written claim of the insured for disability benefits under those policies, and a report in writing by a named physician showing the falsity of the answers above mentioned; that after investigation, appellee, on August 12, 1929, rescinded said contracts of insurance, notified the insured and the beneficiary to that effect, and tendered to the insured the aggregate amount of the two annual premiums which had been paid on those policies; that insured refused to accept the amount so tendered; that the stated total amount paid by the insured to appellee on account of said two policies with interest to the date of the filing of the bill is paid into court for the insured; and that the insured has not sued the appellee on his claim for permanent disability under said policies, but has threatened to do so. The only issue or fact raised by the evidence was as to the circumstances of the signing of the applications by the insured. Testimony in behalf of the appellants tended to prove that the physician who examined the insured did not ask any of the questions contained in the applications, that the insured

did not answer those questions, and signed the written applications presented to him without knowing or being informed of the contents thereof; some writing on which was done in the insured's presence by the physician who presented them to the insured for his signature. Other testimony tended to prove that the questions were asked and answered as indicated by the signed written applications, each of which, near the end of it, contained the statement: "On behalf of myself and of every person who shall have or claim any interest in any insurance made hereunder, I declare that I have carefully read each and all of the above answers, that they are each written as made by me, and that each of them is full, complete and true, and agree that the Company believing them to be true shall rely and act upon them."

Each of the policies contained the following provisions:

"The Policy and the application therefor, copy of which is attached hereto, constitute the entire contract. All statements made by the Insured shall, in absence of fraud, be deemed representations and not warranties, and no statement shall avoid the Policy or be used in defense to a claim under it, unless it is contained in the written application and a copy of the application is endorsed upon or attached to this Policy when issued. * * *

"This Policy shall be incontestable after two years from its date of issue except for non-payment of premium and except as to provisions and conditions relating to Disability and Double Indemnity Benefits."

By the decree rendered, the policies were canceled, and the clerk was ordered to pay the costs of the cause out of the fund paid into court by appellee, and to pay over the balance to the appellants.

■ A defense relied on was based on the following Alabama statute: "No life insurance company shall contest a claim under any policy of insurance on the plea of fraud or irregularities in application after two annual premium payments have been made on policy, but must pay the full amount of policy within sixty days after proofs of death have been received at the home office of the company in the United States, and no plea of misrepresentation or fraud in the application shall be filed unless accompanied by a payment into court, for the plaintiff, of all premiums paid on the policy." Code of Alabama, 1923, § 8365.

The language of this provision quite plainly shows that the subject of it is "a claim under any policy of insurance," and that the only kind of claim which the lawmakers had in mind in enacting the provision was one based on the death of a person whose life was insured by a policy sued on. This suit is not such a one as the quoted statute deals with. The time limit within which such a suit as this one is maintainable is fixed, not by that statute, but by an above set out provision of each of the policies to the effect that, with exceptions not here material, the policy is not subject to be contested or its validity brought into question "after two years from its date of issue." That provision is not applicable to this suit, which was brought within two years from the date of issue of each of the policies in question. A similar conclusion was reached under apparently somewhat similar circumstances in the case of Mutual Life Ins. Co. v. Lambert (D. C.) 34 F.(2d) 215.

■ The false answers, the matters thereby misrepresented obviously being such as would prejudicially affect the risk to be incurred by the policies applied for, became parts of the contracts entered into. The insured could not hold the policies delivered to him without becoming chargeable with knowledge of their contents, including the applications, which were attached to the policies, and expressly made parts of the contracts. His retention of the policies was an approval of the applications, and the falsity of the answers to the above set out questions made the contracts voidable at the insurer's option. New York Life Insurance Co. v. Fletcher, 117 U. S. 519, 534, 6 S. Ct. 837, 29 L. Ed. 934; Stipcich v. Insurance Co., 277 U. S. 311, 316, 48 S. Ct. 512, 72 L. Ed. 895.

A different result is not required by the Alabama statute which provides: "No written or oral misrepresentation, or warranty therein made, in the negotiation of a contract or policy of insurance, or in the application therefor or proof of loss thereunder, shall defeat or void the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss." Code of Alabama, 1923, § 8364.

■ That statute does not purport to change the definition of a warranty. The answers to the three questions above set out being statements on the part of the insured relating to the risk, and appearing on the face of instruments attached to the policies, which expressly were made part of the insurance contracts, were warranties. The statute does not change the legal effect of a warranty further than its terms plainly import. A breach of a

warranty still has the effect of giving to the insurer the option of avoiding the policy in either of two contingencies; if the misrepresentation is made with actual intent to deceive, or if the matter misrepresented increase the risk of loss to the insurer. If the matter misrepresented increased the insurer's risk of loss, the misrepresentation is sufficient to vitiate the policy, whether it was or was not made with intent to deceive. Sovereign Camp, W. O. W., v. Hutchinson, 214 Ala. 540, 108 So. 520; Louisiana State Life Ins. Co. v. Phillips (Ala. Sup.) 135 So. 841; Accident Ins. Department, etc., v. Brooks, 216 Ala. 605, 114 So. 6; 14 R. C. L. 1026.

█ It plainly appeared from practically uncontroverted evidence that within a year prior to the signing of the applications by the insured he had been found to have high blood pressure, that he had suffered from a disease of the heart, that he had consulted or been examined or treated by a physician for an ailment or disease of the heart or blood vessels, and that the condition misrepresented would tend to shorten life. Such evidence supported a finding that the matter so misrepresented increased the risk of loss to the insurer. This being so, the decree under review was not erroneous. That decree is affirmed.