154 So. 798

## ALL STATES LIFE INS. CO. v. JAUDON.

### 6 Div. 533.

Supreme Court of Alabama.

April 12, 1934.

Rehearing Denied May 31, 1934.

H. A. & D. K. Jones and Herbert Findley, all of Tuscaloosa, for appellee.

Harwood & McQueen, John D. McQueen, Jr., Foster, Rice & Foster, and J. G. Madison, all of Tuscaloosa, for appellant.

BROWN, Justice.

Assumpsit by the appellee against appellant for the breach of the conditions of two policies of insurance issued to the plaintiff by the Fidelity Life Insurance Company of Birmingham, Ala., on the 19th day of June, 1929, whereby the said Fidelity Life Insurance Company in consideration of a premium of $82.50 paid and to be paid annually, by each of said policies, numbered 570 and 571, insured the life of the plaintiff in the sum of $2,500 to be paid to his wife, upon proof of his death and the surrender of said policies. And by what is termed "Supplemental Agreement attached to and forming a part" of each of said policies, stipulated: "Upon receipt at the Company's Home Office of due proof that the insured has, *since the payment of the first premium* on said policy, before default in the payment of any subsequent premium and before the anniversary of the policy nearest the insured's sixtieth birthday, become *totally and permanently disabled* as defined below, the Company will waive the payment of any premiums which may fall due thereafter during such disability and will pay to the insured Ten Dollars for each $1,000 of insurance shown on page one of the policy for each completed month thereafter during the period of continuous total disability." (Italics supplied.)

The case was presented to the court and jury on counts 3, 4, 5, and 6. Counts 3 and 5 are for breach of the quoted stipulation in policy No. 570, and 4 and 6 for the breach of the stipulation in policy No. 571. All of these counts are identical in averment, except counts 4 and 6 aver that the plaintiff was not totally and permanently disabled on and prior to the issuance of said policies.

The substance of the averments of said counts, other than as above stated, is illustrated by the averments of count 3. Said count claimed a total of $50, for that said Fidelity Life Insurance Company on June 19, 1929, insured the life of plaintiff for $2,500, naming plaintiff's wife as the beneficiary, incorporating in said policy the stipulation for total and permanent disability; that on the date of the issuance and delivery of said policy he paid the first annual premium thereon, and on the 19th of June, 1930, paid the second annual premium thereon. That on the 1st of November, 1930, "*after the payment of the first premium on said policy and said supplemental agreement, and before default in the payment of any subsequent premium, and before the anniversary of said policy nearest the plaintiff's sixtieth birthday*, the plaintiff suffered or sustained a physical or mental disablement so that he was wholly and is wholly and permanently disabled, and prevented from engaging in any occupation, business, or employment for remuneration or profit." That on February 1, 1931, and before the third annual premium on said policy and said supplemental agreement had become due, plaintiff made to said Fidelity Life Insurance Company due proof of this fact, and said Fidelity Life Insurance Company accepted said proof and paid to plaintiff the disability benefits as provided in said policy for the months of November and December, 1930, and January, 1931, and thereafter paid said benefits for the months intervening up to and including August, 1931. That thereafter the defendant took over all of the assets and business of said Fidelity Life Insurance Company and assumed all of its obligations, and paid to the plaintiff the monthly disability benefits due plaintiff on said policy up to and including January, 1932. That defendant had due notice "of plaintiff's continued total disability during the months of February and March 1932, but has wholly failed to pay the plaintiff the said sum of Ten Dollars ($10.00) for each one thousand dollars of the insurance granted by said policy Number 570 for the month of February, 1932, and the month of March, 1932, or any part thereof." (Italics supplied.)

To these counts the defendant interposed the general issue, and fifteen special pleas. Some of the pleas, to which demurrers were sustained, set up untruthful answers made by the assured in his application for the issuance of the policies, made with intent to

deceive and upon which the Fidelity Life Insurance Company acted in the issuance of the policies. Others alleged that "the matters misrepresented increased the risk of loss." Code, § 8364. This classification embraces pleas 4, 9, D, and V.

To sustain the ruling of the court, appellee contends: First, that the effect of the transaction in which the defendant took over all the business and assets of the Fidelity Life Insurance Company and assumed all of its obligations, in legal effect, constituted the defendant a transferee of the policies in suit, and that a right of action or defense based on fraud and deceit is personal to the party defrauded, and on grounds of public policy is not the subject of bargain and sale; therefore, defendant is not in a position to assert the defenses set up by said pleas.

■ It seems to be well settled, as a general proposition under the common law, that a right of action arising from tort is nonassignable, and this rule has been applied to actions for fraud and deceit, "where the wrong is regarded as one to the person." Phillips v. Malone, 223 Ala. 381, 136 So. 793; Prouty v. Alabama Great Southern Railway Co., 174 Ala. 404, 56 So. 980; 5 C. J. 887, § 53.

■ However, many courts of last resort have held that where the injury resulting from fraud and deceit "is regarded as affecting the estate or arises out of contract," the right of action passes with the transfer of the estate or contract. 5 C. J. p. 891, § 56, and cases cited under notes 96 and 97.

■ However, as we view the transaction between the Fidelity Life Insurance Company and the defendant, the defendant was in no sense a transferee of the policies in suit. Both the title to and possession of these were in the plaintiff, and the Fidelity Life Insurance Company had neither the legal right nor the power to transfer said policies. Nor did the defendant assume a specific debt due from the Fidelity Life Insurance Company to the plaintiff. The obligation assumed by the defendant, on which the plaintiff declares in this action, is in the nature of a contract of reinsurance, through which the defendant, so to speak, stepped into the shoes of the Fidelity Life Insurance Company, taking over its assets and business with all of its burdens and benefits, including the right to set up fraud and deceit in procuring the issuance of the original policy as a defense against its liability on its assumption of liability or reinsurance obligation. Eagle Insurance Co. v. Lafayette Insurance Co., 9 Ind. 443; Merchants' Mutual Insurance Co. v. New Orleans Mutual Insurance Co., 24 La. Ann. 305, 307; New York State Marine Ins. Co. v. Protection Ins. Co. (Circuit Court of U. S.) Fed. Cas. No. 10,216, 1 Story, 458; Hone and Bokee, Receivers, etc., v. Mutual Safety Ins. Co., 3 N. Y. Super. Ct. (1 Sandf.) 137; Hastie and Patrick v. De Peyster and Charlton, 3 Caines (N. Y.) 190; 45 Am. St. Rep. note p. 448; 37 C. J. p. 593, § 366; 33 C. J. 54, § 731.

It would be not only illogical, but unjust, to allow the insured to maintain an action on the obligation of reinsurance to which he is not a party, and deny to the reinsurer the right to defend against liability for vitiating fraud practiced by the insured in obtaining the issuance of the policy contract, upon the strength of which he must recover, if at all. 14 R. C. L. p. 1453, § 618.

■ The pleader, in drawing the complaint, anticipated pleas of fraud in the application for the issuance of the policies by the Fidelity Life Insurance Company, and undertook to meet such pleas by averring that prior to his alleged total disability plaintiff had made two annual premium payments on said policies, and insisted upon the trial, by his demurrers to said pleas, and renews that insistence here, that said payments, under the provisions of section 8365 of the Code, rendered said policies incontestable against the claim for total disability. That section provides: *Life policies incontestable after two annual premiums paid.*—No life insurance company shall *contest a claim under any policy of insurance* on the plea of fraud or irregularities in application after two annual premium payments have been made on policy, *but must pay the full amount of policy within sixty days after proofs of death* have been received at the home office of the company in the United States, and no plea of misrepresentation or fraud in the application shall be filed unless accompanied by a payment into court, for the plaintiff, of all premiums paid on the policy." Section 8365, Code. (Italics supplied.)

Appellant insists that claims for total disability are not within the purview of this statute; that by its plain terms it only applies to claims arising from the death of the insured. This construction of the statute is supported by the opinion of the United States Court of Appeals, written by Judge Walker, a former Justice of this court, in Franco et al. v. New York Life Ins. Co., 53 F.(2d) 562, a bill in equity to cancel a policy insuring against permanent and total disability, on the ground that the insured made false answers to certain questions in his application, which

increased the risk of loss, and one of the defenses was that section 8365 of the Code of 1923 rendered the policy incontestable on such ground. After quoting the statute, it was observed: "The language of this provision quite plainly shows that the subject of it is 'a claim under any policy of insurance,' and that the only kind of claim which the lawmakers had in mind in enacting the provision was one based on the death of a person whose life was insured by a policy sued on." 53 F.(2d) 562, 564.

The genesis of this statute and the history of insurance against total and permanent disability in this country clearly demonstrate that this interpretation of the statute is sound.

It originated in the act entitled "An Act to regulate the business of insurance in the State of Alabama," appearing as section 22 of that act, in the language of section 8365, except it provided for three instead of two annual premium payments as a predicate for its operation (Acts 1896-97, pp. 1377, 1389), and was incorporated in the Code of 1896 as section 2597. The change above noted was made when the statute was brought forward in the Code of 1907 as section 4573 "(r.c.c.)."

In Professor Huebner's text-book on Life Insurance, published in 1923, chapter XXII, p. 295, treating the subject of "Development of Disability Insurance," it is stated: "A new clause has appeared in life-insurance contracts in the United States in recent years, granting protection against the risk of total and permanent disability. The first known instance of its kind appeared on October 16, 1896, when an American company issued such a policy on the life of its president. Since then interest in the clause has grown so rapidly that the great majority of companies are now [1923] using it."

■ Defendant's pleas 8 and J, to which the court sustained the plaintiff's demurrers, set up a breach of warranty as to the plaintiff's good health at the time of the delivery of the policies sued on. Whatever might be said of plea J, plea 8 was not subject to the stated grounds of demurrer, notwithstanding the anticipatory averments of the complaint, that the second premium was paid by plaintiff and accepted by the insurer, and likewise proof of disability was also accepted and payments of disability benefits were made. There is an absence of averment that such payment and proof were accepted by the insurer with knowledge of plaintiff's infirmity at the time of the delivery of the policy. Cotton States Life Ins. Co. v. Crozier, 216 Ala. 537, 113 So. 615; Southern States Life Ins. Co. v. Dunckley et al., 226 Ala. 588, 148 So. 320.

■ The right of the defendant, standing in the shoes of the Fidelity Life Insurance Company, when sued on its obligation of reinsurance, to plead fraud and deceit on the part of the plaintiff in procuring the issuance of the policies by said Fidelity Life Insurance Company, a fraud which affects the estate that defendant took over and holds, as the consideration for its obligation, is quite different from its right to maintain an action for deceit, or assert the same as a counterclaim, for the recovery of damages sustained by the Fidelity Life Insurance Company, before defendant acquired its interest. Such damages are clearly personal to the Fidelity Life Insurance Company, and in no sense affect the estate which it acquired in the transaction. The following cases are not strictly analogous, but to some degree illustrate the principle; Brown v. Supreme Lodge, K. P., 225 Ala. 114, 142 So. 388; National Life & Accident Ins. Co. v. Propst, 219 Ala. 437, 122 So. 656; Phillips v. Malone, 223 Ala. 381, 136 So. 793.

Our judgment, therefore, is that the demurrers to defendant's plea L were properly sustained.

The foregoing is sufficient to indicate that the court erred in sustaining the plaintiff's demurrers to defendant's pleas 4 and 8, and for this error the judgment is reversed.

■■ We deem it unnecessary to treat the other questions argued, further than to observe that the burden of proof was on the plaintiff to reasonably satisfy the jury that his alleged total disability arose after the payment of the first premium, and before the due date of any subsequent unpaid premium, and countervailing evidence pertinent to this question was admissible under the plea of the general issue.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.