## FIRST NAT. BANK OF BIRMINGHAM v. EQUITABLE LIFE ASSUR. SOC.
### No. 5045.

District Court, N. D. Alabama, S. D.
March 14, 1940.

Cabaniss & Johnston, of Birmingham, Ala., for plaintiff.

Howze & Brown, of Birmingham, Ala., for defendant.

MURPHREE, District Judge.

This case is submitted upon an agreed statement of facts which taken in connection with the policy itself shows the following:

During January, 1923, an application was made for a policy for $50,000, insuring the life of Louis S. Russell. Said application twice contained the statement that Russell was born on March 4, 1865, and that his insurance age at nearest birthday was then fifty-eight. The policy was issued and the recitals upon its face began with the following sentence: "The Equitable Life Assurance Society of the United States hereby insures the life of Louis S. Russell (herein called the Insured) and agrees to pay at its Home Office in the City of New York Fifty Thousand Dollars (the face of this policy) to the Russell Clay Mfg., Co., its successors or assigns (herein called the Owner), upon receipt of due proof of the death of the Insured, provided premiums have been duly paid and this policy is then in force and is then surrendered properly released."

There also appears upon the first page of the policy the words "Face Amount" under which appears the figures "$50,000.00."

On the second page of the policy there appears this clause: "This policy shall be incontestable after one year from its date of issue, provided premiums have been duly paid, subject to the provisions as to age stated on the third page hereof."

On the third page of the policy there appears the following paragraph: "Age. If the age of the Insured has been misstated, any amount payable under any of the provisions of this contract, shall be that amount which the premium charge would have purchased at the Society's rates in use at the register date hereof for the Insured's correct age."

The policy was assigned to the plaintiff which has paid all the premiums, except the first, having paid some $49,000 in premiums, the total premiums paid amounting to nearly $53,000.

Upon the death of the insured, which occurred in 1937, it was learned that his age had been misstated, and that he was born on March 4, 1856, instead of March 4, 1865, as was stated in the application, and that his correct age on the register date of the policy was sixty-seven and not fifty-eight.

The defendant claims that it has the right to reduce the face amount of the policy of $50,000 to $30,917.50, because of this difference in age, and the parties agreed that plaintiff should accept said sum of $30,917.-50 without prejudice to its right to sue for the balance claimed.

The plaintiff insists that Section 8365 of the Alabama Code of 1923 prohibits the defendant from escaping its full liability for what the policy itself refers to as its face amount of $50,000 because of the misstatement of age in the application; or, to state the matter in another way, plaintiff takes the position that the age adjustment clause of the policy, which purports to allow the defendant to escape liability for the full face amount by reason of the misstatement in the application, as it is attempted to be applied in this case, conflicts with and is prohibited by said section of the statute.

Section 8365 of the 1923 Code of Alabama provides as follows: "No life insurance company shall contest a claim under any policy of insurance on the plea of fraud or irregularities in application after two annual premium payments have been made on policy, but must pay the full amount of policy within sixty days after proofs of death have been received at the home office of the company in the United States, and no plea of misrepresentation or fraud in the application shall be filed unless accompanied by a payment into court, for the plaintiff, of all premiums paid on the policy."

The only question in this case, being a question of law, arising on the statement of facts, is whether the above quoted provision of the policy can be given effect in view of said Section 8365 of the Code of Alabama. Section 8364 of the Alabama Code need not be considered as will be revealed from the consideration of the Alabama cases hereinafter discussed.

The briefs of both parties to this case have cited many cases involving "age adjustment clauses" in policies under "non-contestability clauses" in the same policies. Under the construction Section 8365 of said Code has been given by the Alabama courts, these cases are persuasive of what the law possibly should be from the standpoint of ordinary justice, but cannot control the valid and effective statutory prohibition contained in the non-contestable statute.

Section 8365 was first passed as "An Act To regulate the business of insurance in the State of Alabama" (Acts 1896–97, pp. 1377, 1389, Section 22). It was incorporated in the Code of 1896 as Section 2597, but provided for three years instead of two. The change was first noted when the statute was brought forward in the Code of 1907 as Section 4573. Quoted from All States Life Insurance Company v. Jaudon, 228 Ala. 672, 154 So. 798, 94 A.L.R. 1128.

■ Section 8365 is self executing and is written into or read into every policy of life insurance written in Alabama. It has the effect of a Statute of Limitations against the defenses specified against in the Statute. 5 Cooley's Briefs, 4483 et seq.; Modern Order of Praetorians v. Wilkins, 220 Ala. 382, 125 So. 396.

■ Such provisions are mandatory and control the policy of insurance. Equitable Life Assurance Society v. Benjamin F. Pettus et al., 140 U.S. 226, 11 S.Ct. 822, 35 L. Ed. 497.

■ Since Section 8365 has been treated as a short Statute of Limitation, the words "contest a claim * * * on the plea of fraud or irregularities in the application * * *." should be construed in the light of the limitation statute.

" 'Fraud or irregularity in the application' are inclusive terms. 'Fraud' is probably inserted because under some decisions incontestable clauses were not deemed to cover undiscovered fraud.

"It is sufficient to say here the purpose of the statute is to fix a limit of time while the assured may be still living within which defenses of the character set up in these pleas must be asserted. It is of no concern whether the misrepresentation in the application is made a warranty or declared a condition precedent.

"The complaint to which the pleas were addressed avers the policy had been in force two full years before the death of the insured. Demurrers to these pleas were properly sustained. We would not be understood as holding that misstatement of age is within this clause of the contract. The constitution and by-laws, showing the contract, is in the record. Special provisions as set forth in plea 2 and related provisions govern cases of misstatement of age. Trial was had on plea of the general issue and special plea averring lapse for nonpayment of dues and assessments." Modern Order of Praetorians v. Wilkins, 220 Ala. 382, 125 So. 396, 398.

"The pleas 2 to 9 setting up the misrepresentation and breach of warranty as to her age showed that they were such matters of defense as are included in that act. Modern Order of Prætorians v. Wilkins, 220 Ala. 382, 125 So. 396. There was no demurrer to the pleas, but we think that since they, together with the complaint, showed that the policy sued on was subject to the act of 1919 (section 8506, Code), and that the policy was in force for over two years before insured died, the pleas did not set up matter good in avoidance, as we now view the situation. * * *

"But for the failure to set aside the verdict as against the great weight of the evidence offered to sustain the pleas, the judgment must be reversed, though apparently the pleas are subject to demurrer." Fraternal Aid Union v. Monfee, 230 Ala. 202, 160 So. 529.

" '9. No person over the age of 65 years will be admitted to membership of the Society. If he or she misrepresents their age this Society will not be held liable for a burial and their monies will be forfeited to the Society.'

"The trial court refused to admit such testimony on the ground that it presented an issue of fraud in the procurement of the certificate, which was not available under the statute after the policy had been in full force for two years.

"The policy was issued in 1928, and kept in force by regular payment of weekly premiums until the death of the insured in 1936.

"Under Code, § 8506, no fraternal life insurance company may contest a claim on the ground of fraud in the application after same has been in force for two years.

"This policy was issued while Gen.Acts, 1927, pp. 215, 216, § 1, Michie's Code, § 8554 (5), was in effect. By that statute burial associations were declared to be 'mutual aid, benefit and/or industrial insur-

ance companies or associations.' Further provisions of the same statute look to providing the same safeguards for the protection of policy holders as provided for mutual benefit associations. We are of opinion the trial court correctly held the provisions of Section 8506 were thus extended to holders of burial certificates in burial societies. This statute writes into contracts the proviso that fraud in the procurement of certificates shall not be available as a defense after the same have been in force two years. Misrepresentations as to age are of the class covered by such statutes. Beason v. Sovereign Camp, W. O. W., 208 Ala. 276, 94 So. 123." Jefferson County Burial Society, Inc., et al. v. Curry, 237 Ala. 548, 551, 187 So. 723, 725.

■■ The Alabama courts have held that a claim under a policy cannot be avoided in toto because of the statute. It would not be contended that a life insurance company in Alabama could insert a provision in a policy limiting its liability to the return of the premiums paid or denying liability altogether. Can it then limit its liability to that specified in an "Age Adjustment Clause"? Natural justice and fairness would prompt a reply in the affirmative. However, the statute makes no distinction between policies containing "Age Adjustment Clauses" and those without. The provisions of the statute cannot be waived by the insured. It is prohibitory and forbidding. If the denial of the claim for any part of the face amount of the policy is based on fraud occurring in the application, the statute takes effect and prevents the denial of the claim, provided such a denial constitutes a "contest" as contemplated by the Statute.

Defendant's counsel in their brief cite many cases purporting to illustrate under same or similar facts as those in this case that the defenses interposed under the "age adjustment clause" do not constitute a "contest" of the policy in the case at bar. Out of the great number of cases cited only seven cases involve statutes. Three of these relate to statutes providing for age adjustment. Four involve statutes similar or somewhat similar to Section 8365, the Alabama Statute. None involve the identical question raised by the issue in this case.

In the following cases the statute itself provides that liability shall be limited to the insurance allowed for the correct age. Edelson v. Metropolitan Life Ins. Co., 95 Misc. 218, 158 N.Y.S. 1018; Equitable Life Assurance Society of the United States v. Rothstein, 122 N.J.Eq. 606, 195 A. 723; American Bankers' Insurance Co. v. People's Undertaking Co., Tex.Civ.App., 78 S. W.2d 1045.

In the following cases a non-contestable statutory provision was in question, and quotations from these cases will serve to illustrate their tenor and nature:

"The sole issue for our consideration is whether Virginia Code 1936, section 4228, providing that a policy of life insurance shall, with exceptions therein stated, be incontestable 'for any cause after it shall have been in force during the lifetime of the insured for one year from its date,' is applicable to the defense made by the insurer. * * *

"The incontestable statute is a short statute of limitation, applied when the validity of the policy is contested. It is not a limitation upon the amount of the coverage, nor of the risk assumed. It does not limit the right of the insurance carrier to refuse the payment of a larger sum than is made payable by the terms of the policy, nor limit the right to contend that the terms of the policy exclude certain risks.

"Under the incontestable clause, the insurer may not contest the validity of the contract for false or fraudulent statements made by the insured to secure the policy, for questions involved in the inception of the policy, nor for breach of covenants and conditions subsequent by the insured, after liability has become fixed. But the statute does not deny to the insurance carrier the right to question the genuineness of the claim, controvert the amount of its liability, or to contend that the risk involved was not assumed in the coverage." Darden v. North American Benefit Association, 170 Va. 479, 197 S.E. 413, 414, 415.

" 'Sec. 184. No life insurance policy, except policies of industrial insurance or where the premiums are payable monthly or oftener, shall be issued or delivered in this state on and after January first, nineteen hundred and twelve, unless it contains in substance the following provisions: * * *

" '(2) A provision that (the) policy, so far as it relates to life or endowment insurance, shall be incontestable after two years from its date of issue except for non-payment of premiums, and except for violation of the conditions of the policy relating to military or naval service in time of war.' See sections 7229, 7230, Rem.Comp.Stat.

"The Commissioner's reason for his disapproval of the proposed aviation clause is stated in the brief of his counsel, as follows: 'His position, briefly stated, is that the incontestable clause is exclusive in its enumeration of exceptions available as a defense against liability after the expiration of the two-year period and that, in so far as the rider undertakes to limit liability for death by aerial navigation after the policy becomes incontestable, it violates the statute. Since, under the statute, a company is permitted after two years to contest liability only (1) for non-payment of premiums and (2) for violation of conditions respecting war service, says the commissioner, violation of conditions respecting aerial navigation cannot be added as a third ground of contest with the result that the rider is invalid unless it be limited to the contestable period of two years only.' * *

"The language is, with reference to death occurring under any of the specified conditions, 'is a risk not assumed under this policy.' It seems plain to us that a risk 'not assumed' by such express language is a matter not at all inconsistent with the required statutory incontestable provision, and that the resisting by an insurance company of a claim for a loss which by such express terms of the policy is 'not assumed' by the insurance company is not a contesting of the policy within the meaning of the statutory incontestable clause required to be embodied therein." Pacific Mut. Life Ins. Co. of California v. Fishback, 171 Wash. 244, 17 P.2d 841, 842.

"Running through both of these opinions, in stating the purpose and effect of incontestable clauses, are expressions emphasizing that this limitation on contests has reference to matters going to the validity of the contract; as affected particularly by the representations made in its procurement. * * *

"And so Mr. Justice McKinney, in the Thistle Case, supra [Thistle v. Ins. Co., 149 Tenn. 667, 261 S.W. 667], speaking of the statutory incontestable clause, says:

" 'The purpose of the above statute was to prevent the issuing of a life policy that could be contested after two years. In other words, the Legislature entertained the view that two years was a reasonable time for the insurer to ascertain whether the policy had been obtained by fraud or for other reason justifying a contest as to its validity.' How could the 'purpose' thus defined possibly have application to a 'rea-son justifying a contest' until the arising of the reason? The incontestable clause considered in Clement v. Ins. Co., 101 Tenn. 22, 46 S.W. 561, 42 L.R.A. 247, 70 Am.St.Rep. 650, while not identical with that now before us, was, in substance, the same. On page 27 of the opinion (46 S.W. 562) this court said:

" 'The provision in this case is very broad in its terms. There is only one condition upon which the validity of the policy can be questioned, after the lapse of a year, and that is the nonpayment of premiums. The meaning of the provision is that, if the premiums are paid, the liability shall be absolute under the policy, and that no question shall be made of its original validity.'

"Again, at page 28 (46 S.W. 562), it is said:

" 'The practical and intended effect of the stipulation is to create a short statute of limitation in favor of the insured, within which limited period, the insurer must, if ever, test the validity of the policy. * * The effect of this agreement not to contest is to put the company in the attitude of being unable to set up any fraud or false swearing in obtaining the policy, or any other defense to it, save the one excepted, so far as its original validity is concerned.' " Scales v. Jefferson Standard Life Ins. Co., 155 Tenn. 412, 295 S.W. 58, 55 A.L.R. 537.

"The 'incontestable' provision in section 6731, supra, is not a mandate as to coverage nor a definition of the hazards to be borne by the insurer. It provides rather that, after the expiration of the two year period, the policy, within the limits of the coverage, shall stand unaffected by any defense that it was invalid in its inception or thereafter became invalid by reason of a condition broken. The exceptions to the 'incontestable' provision of the statute do not militate against this construction. Here, again, the distinction must be made between limitation on the coverage and limitation on a defense of invalidity." Head et al. v. New York Life Ins. Co., 10 Cir., 43 F.2d 517, 519.

Most of the other cases cited by defendant's counsel have to do with whether incontestable clauses in policies prevent defenses based on suicide, death from immoral acts, deaths from criminal acts and other defenses based on acts arising under alleged violations of clauses in the policies after the issuance and incipiency of the policy. an examination of these authorities show

that there is great division as to the holding in such cases. A review of the authorities is contained in Jolley v. Jefferson Standard Life Insurance Company, 199 N. C. 269, 154 S.E. page 400. Though it is not entirely in point it is well to observe what the court there said: "That is to say, the application of the incontestable clause precludes an insurance company from questioning the validity of the contract in its inception, or that it thereafter became invalid by reason of a broken condition. Hence an ordinary incontestable clause cannot be used as a means of rewriting into the contract risks and hazards which the policy itself positively excluded. Woodbery v. N. Y. Life Ins. Co., 129 Misc. 365, 221 N.Y.S. 357; Sanders v. Jefferson Standard Life Ins. Co. (C.C.A.) [4 Cir.] 10 F.2d 143; Scales v. Jefferson Standard Life Insurance Company, 155 Tenn. 412, 295 S.W. 58, 55 A.L.R. 537. A line-up of the courts upon the question will appear in the annotation contained in 55 A.L.R. 549." Jolley v. Jefferson Standard Life Ins. Co., 199 N.C. 269, 154 S.E. 400, 402.

If it is desired to pursue an examination of the divided authorities on such questions, there are a number of A. L. R. annotations, beginning with 55 A.L.R. 549.

It is well to bear in mind that the Legislature in Alabama had the purpose, by enacting Section 8365 of the Code, of limiting a life insurance company to two years within which it could escape liability on a policy for fraud or irregularities in the application. After two annual premiums have been paid the Statute sets up a bar in the nature of an estoppel and the insurer in such a case cannot prove the fraud or falsity of statements made in the application. It would not be allowed to prove that the insured, Louis S. Russell, was in fact 67 years of age at the time of the application and not 58 as he represented. The time limit for such proof expired when the terms of the statute were met. Defendant's counsel do not deny that the Alabama courts have held that such proof could not be offered to deny all liability on the policy. Their contention, as it appears, is that the insured agreed that it could be done for the purpose of limiting its liability to the correct age rate. The statute makes no such distinction.

"We cannot agree with the learned courts below in their interpretation of the statute. The contract between the parties, evidenced by the policy, is, we think, an evasion of the statute, and tends to defeat the objects for which it was enacted. In clear, emphatic words the statute declares that in all suits on policies of insurance on life it shall be no defense that the insured committed suicide, unless it be shown that he contemplated suicide when applying for the policy. Whatever tends to diminish the plaintiff's cause of action or to defeat recovery in whole or in part amounts in law to a defense. When the company denied its liability for the whole of the principal sum, it certainly made a defense as to all of that sum except one tenth. If, notwithstanding the statute, an insurance company may, by contract, bind itself, in case of the suicide of the insured, to pay only one tenth of the principal sum, may it not lawfully contract for exemption as to the whole sum or only a nominal part thereof, and, if sued, defeat any action in which a recovery is sought for the entire amount insured? In this way the statute could be annulled or made useless for any practical purpose. Looking at the object of the statute, and giving effect to its words according to their ordinary, natural meaning, the legislative intent was to cut up by the roots any defense, as to the whole and every part of the sum insured, which was grounded upon the fact of suicide. The manifest purpose of the statute was to make all inquiry as to suicide wholly immaterial, except where the insured contemplated suicide at the time he applied for his policy. Any contract inconsistent with the statute must be held void." Whitfield, etc. v. Aetna Life Insurance Co., 205 U.S. 489, 27 S.Ct. 578, 580, 51 L.Ed. 895.

The facts in this case well serve to justify the legislative purpose contained in Section 8365. It was not until substantially fourteen years after the policy was issued that the parties in this case, so far as the facts are shown, discovered the misstatement of the age of the insured in the application. The condition of the policy (except for the age adjustment clause) was to pay $50,000 upon the death of the insured, Louis S. Russell. In order to defeat recovery of full amount stated in the policy the insurer offers to show that there is a discrepancy in the age stated in the application and the correct and true age of the insured. To avail itself of its defense it must refer to the application. But this is what the statute says it cannot do. To hold otherwise would be just as unequitable to the plaintiff who likewise relied on the age

set up in the application, the condition of the policy and the statute, as did the insurer. A better example of the wisdom of the legislative policy would be difficult to find.

An order consistent with this opinion will be entered.