## CARRIGAN v. MASSACHUSETTS BENEFIT ASS'N.[1]

*(Circuit Court, E. D. Pennsylvania.  October, 1884.)*

1. LIFE INSURANCE—APPLICATION QUALIFYING CONTRACT—PENNSYLVANIA STATUTE.

    The Pennsylvania statute, prohibiting an application not attached to the policy to be used in any way to qualify the terms of the contract, does not prohibit the introduction of such an application for the purpose of showing fraud in the procuring of the contract.

2. SAME—WRITTEN APPLICATION.

    Where the policy and by-laws of the company require a written application by the insured, a paper purporting to be an application, whose questions were not in fact answered by the insured, but which were answered and the paper executed throughout by another, in her name, the policy procured on such application was a fraud and void.

This was an action brought to recover $5,000 on a policy of insurance on the life of Mary A. McCaffrey, for the benefit of her sister, Margaret Carrigan, the plaintiff.  The declaration was in covenant, and set out the policy at length.  The defendants filed a plea of "covenants performed, *absque hoc,* with leave to give in evidence the special matter," and several special pleas, alleging—*First,* that the application on which the policy was issued was a forgery; that Mary A. McCaffrey never signed it; *second,* that the insured was in the last stage of consumption at the time the application was made, which represented her to be in robust and perfect health; *third,* that the policy in suit was part of a conspiracy entered into by the plaintiff, the examining physician, and several others, to cheat and defraud the defendant association and others out of large sums of money. The case was tried before Judges McKENNAN and BUTLER, in the United States circuit court, at Philadelphia, October 15, 1885, and a verdict was rendered for the defendants.  The plaintiff offered in evidence the policy and proofs of loss, and proved the death of the insured, and there rested.  The defendants proved that the signature to the application purporting to be that of Mary McCaffrey was not her genuine signature, whereupon the plaintiff's counsel admitted such to be the fact, but claimed that her name was signed thereto in her absence by one John J. Devlin, who had been told by the insured to sign her name to the application, in case she were not present when it should be presented for her signature.  The defendants then offered in evidence the application, which was objected to by the plaintiff, on the ground that a copy of the application had not been incorporated in or attached to the policy; and, in support of this objection, presented and read the following statute, passed by the legislature of Pennsylvania, and approved May 11, 1881.

"Be it enacted, etc., that all life and fire insurance policies upon the lives or property of persons within this commonwealth, whether issued by companies organized under the laws of this state, or by foreign companies doing

[1] From Insurance Law Journal.

business therein, which contain any reference to the application of the insured, or the constitution, by-laws, or other rules of the company, either as forming part of the policy of contract between the parties thereto, or having any bearing on said contract. shall contain, or have attached to said policies, correct copies of the application, as signed by the applicant, and the by-laws referred to; and, unless so attached and accompanying the policy, no such application, constitution, or by-laws shall be received in evidence, in any controversy between the parties to, or interested in, the said policy, nor shall such application or by-laws be considered a part of the policy or contract between such parties."

The plaintiff contended that under this law the application could not be admitted; that the penalty for a failure to attach a copy of the application to the policy was the absolute exclusion of the application from the case, and was so intended by the legislature. The defendants contended that they offered it for the purpose of establishing or showing fraud, and not as a part of the contract of insurance, though the policy referred to it and made it a part of the contract; that the legislature never intended to shield and reward a fraud, but only that the terms of the policy itself should not be varied or modified by the introduction or admission in evidence of the application, where no copy was attached to the policy.

After argument of counsel, the court rendered the following decision.

*J. Rich. Grier* and *James M. West,* for plaintiff.

*W. S. Campbell,* for defendant.

BUTLER, J. When this case was previously tried this application was produced, as it is now, for the purpose of proving fraud. I said then it was not necessary to consider (in the view I took of the law) whether the statute is in any case applicable to the trial of a cause in this court. I intimated no opinion or impression respecting it. Since that time this question has been decided, not upon this statute, but upon a similar statute, in New York. The statute is held to be applicable to trial in this court.

The decision of that question, however, now, as it then was, is unnecessary, because the statute, in the judgment of the court, is inapplicable to a case such as this. To my mind, it is plain that the purpose of this statute was to exclude the application where it is not attached to the policy, but is sought to be made a part of the contract, so as to qualify or affect the terms of the policy. It is inapplicable to a case where the purpose is to show, as here, that there was no application made by the insured; that the company was deceived and imposed upon, in the presentation of a paper purporting to be the application of the individual insured, when it was not. No such case was contemplated by the legislature, or there would have been provision to protect a party, under such circumstances, against the use of the application. How could the fraud alleged here, if it exists, be set up in the absence of the paper? Suppose the defendants had undertaken to show, in the absence of the paper, that it was a for-

gery, by calling witnesses who swear they had seen it and knew the handwriting of this girl, and that the signature is not hers? We could not receive it,—the paper must be present and the jury must see it.

McKennan, J. The act of assembly says that an application made and not attached to the policy shall not be used in any way to qualify the terms of the contract. But the application is the foundation of the policy,—it rests upon it,—and can it not be shown that the company was procured to issue this policy by the execution of a fraudulent application? It strikes at the obligation of the policy itself. It is not to be regarded as touching the construction of the paper itself, but as to the subsistence of the policy as an instrument binding the company. That seems to be a common-sense construction of the act of assembly.

The application having been admitted in evidence, the defendant's counsel, in view of the admission made by plaintiff that Mary McCaffrey did not herself sign the application, here requested the court to charge the jury, without going further into the evidence, that, as a matter of law, the plaintiff could not recover if the application were signed in the manner set forth in the admission.

----

After a lengthy argument of counsel, the following opinion of the court was rendered by Judge Butler, Judge McKennan concurring:

Butler, J., (*charging jury.*) The plaintiff put in evidence the policy of insurance and proofs of death, and there rested. The defendants, charging that the policy was fraudulently obtained, by means of a paper which, while it purported to be the application of Mary McCaffrey, the assured, was not, but was made and executed in her name by another in her absence, called witnesses to sustain the charge. Among these witnesses was the plaintiff in the suit, who testified that the signature was not Mary McCaffrey's. When the case had reached this situation, the plaintiff's counsel arose and admitted that the paper purporting to be the application of the assured was not signed by her, nor in her presence; stating at the same time that the person who signed it had been told by her that if an application for an insurance was brought to the house in her absence he should sign it for her. Here the case rested. In this state of the evidence the plaintiff, in our judgment, cannot recover. The policy and by-laws of the company require the written application of the assured, embracing answers to various interrogatories, made and executed by her in person. The paper before us, purporting to be her application, was presented to the company, and the policy thus obtained. This (whether designed or not) was a fraud. Upon its face, the policy shows that it was issued in the belief that the paper was

the application of Mary McCaffrey, executed by her in person, containing her answers, over her signature, to the various questions therein propounded; and that such an application is the foundation of the contract between the parties. The company was left in ignorance of the true character of the paper. There is no evidence whatever that either the company or its agent had knowledge of the fact that the paper was other than what it purported to be. Had it been informed of the circumstances,—that Mary McCaffrey had not answered the questions, but that the paper was executed throughout by another in her name,—it may safely be concluded that the policy would not have been issued. The concealment of these circumstances must therefore be regarded as a fraud, rendering the policy void.

It was urged on behalf of the plaintiff that the admission of the paper, here called an "application," is prohibited by the Pennsylvania statute cited, and that it cannot therefore be considered in this connection. If this were true, it is probable the plaintiff's admission above referred to would of itself sufficiently establish the fact of imposition, on which the defendant relies. It is not true, however. The legislature did not contemplate such a case as this, and the statute is clearly inapplicable. The paper here, as we have already indicated, is not an application within the meaning of the statute any more than it is within that of the policy. It is not the application of the assured, except in appearance. It is a deceptive pretense.

While we have admitted the paper in evidence, it is not for the purpose of opening its contents to contestation, but simply as a means of proving that no application, within the meaning of the policy, was made; and that the defendant was fraudulently induced to enter into a contract of insurance without any reciprocal obligation on the part of the assured, as is plainly contemplated in the policy itself.