148 So. 320

## SOUTHERN STATES LIFE INS. CO. v. DUNCKLEY et al.

### 4 Div. 666.

Supreme Court of Alabama.

May 11, 1933.

Farmer, Merrill & Farmer, of Dothan, for appellant.

O. S. Lewis, of Dothan, for appellees.

KNIGHT, Justice.

Bill by Southern States Life Insurance Company, appellant here, to cancel a certain policy of insurance, issued by it on the life of W. W. Dunckley, with Mattie Lou Dunckley, wife of the insured, as the beneficiary. The policy contained double indemnity and disability clauses, and was issued as of date January 24, 1928. The stated theory of the bill is: (a) The insured made false statements as to his health in his application for the insurance, and in answer to questions by the medical examiner; and (b) that there was a breach of warranty in the "good health clause" as contained in the application and the policy issued thereon. The application was made under date of January 3, 1928, and the answers to the medical examiner under date of January 10, 1928.

It was stipulated in the application that: "The taking effect of said policy is subject to the existence of my continued good health, which by receiving said policy I represent to have been unchanged." And the policy contains this provision: "This policy shall not take effect until it has been actually delivered to and accepted by the insured, nor until the first premium shall have been actually paid while the insured is alive and in good health."

The substance of the respondent's defense, in addition to a denial that he made any false or untrue statements in his application for the insurance, or in his answers to the medical examiner, is that the complainant is estopped, by its conduct and dealing with the insured, with full knowledge, or notice of the condition of insured's health, from insisting upon the invalidity of the policy. The contention in this regard of the respondents is that the complainant, after being advised of the true condition of the insured's health, did demand and accept two annual premiums on said policy, one in January, 1929, and the other in January, 1930.

The cause was heard on the pleadings and proof, and in an elaborate and painstaking opinion, the chancellor held that the charge that the insured had made false statements in his application for the insurance, and in his answers to the medical examiner was not proven, and he further held that, under the evidence, the appellant had waived the breach by the insured of the health clause of the policy and had estopped itself from claiming a forfeiture of the contract, and therefore that it was not entitled to the relief prayed for. A decree was accordingly entered denying relief and dismissing the bill of complaint.

This appeal presents for our review the correctness of the court's decree.

We have carefully read and considered all the evidence in the case, and are at the conclusion that the complainant has not sustained the burden of proof as to its charge that the insured made false statements in his application for the insurance, or in his answers to the medical examiner, and this feature of the case can be dismissed from further consideration.

The evidence leaves no room to doubt that at the time the policy was delivered to the insured's wife, the insured was a critically ill man, and was then a patient in the Moody Hospital at Dothan, Ala., and he remained in that hospital from February 22, 1928, to about March the 18th, same year. On leaving the Moody Hospital the insured was transferred to the United States Government Hospital at Fort McPherson, Atlanta, Ga., for observation and treatment. From the last-named hospital, he was removed to Walter Reed Hospital, Washington, D. C. The said W. W. Dunckley has never recovered from the illness, which, the evidence leaves no room to doubt, commenced on February 21, 1928.

While the evidence establishes the above facts to a point of absolute certainty, yet it also shows that the company's agent, who solicited and delivered the policy and collected the initial premium, knew of the insured's illness at or about the time the policy was delivered; that J. F. Collins, a general agent of the company at Hartford, Ala., was informed, by letter from Cox, the local agent,

of the illness of Mr. Dunckley as early as April 18, 1928, and also of the fact that the illness dated back to February 21, 1928; that the company was advised, under date of April 18, 1928, of Mr. Dunckley's illness, and in the letter of advice to that effect, a letter from Dunckley to the agent Cox was inclosed, in which the said Dunckley stated that he was admitted to the Moody Hospital at Dothan on February 21, 1928; that the company in December, 1928, was furnished a record of the illness of the insured at the Moody Hospital. The evidence leaves no room for doubt that long before the company called upon the insured for payment of the second annual premium, and payment made in response to the demand, the company was fully aware of all the facts relating to the illness of the insured, its extent, seriousness, and the date when it began. The evidence is further convincing to the point that, when the company demanded and accepted payment of the third annual premium, it was fully cognizant of the serious illness of the insured at the time the policy was delivered to him.

■ The clause in the contract of insurance, viz., "this policy shall not take effect until it has been actually delivered to and accepted by the insured, nor until the first premium shall have been actually paid while the insured is alive and in good health," has been given by this court the meaning and effect of a warranty, within the terms of section 8364 of the Code. Reliance Life Ins. Co. v. Sneed, 217 Ala. 669, 117 So. 307; Cotton States Life Ins. Co. v. Crozier, 216 Ala. 537, 113 So. 615; So. Life & Health Ins. Co. v. Morgan, 216 Ala. 529, 113 So. 540; Mut. Life Ins. Co. v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A. L. R. 649; Independent Life Ins. Co. v. Seale, 219 Ala. 197, 121 So. 714; J. W. Lindsey v. Stewart Bros., 219 Ala. 197, 121 So. 700.

■ The above-quoted clause of the contract was inserted for the benefit of the insurer, and being for its benefit, it could waive the same, or, by its dealings with the insured, could put itself in such a position as to be estopped from insisting upon the breach. American Nat. Ins. Co. v. Few, 224 Ala. 576, 141 So. 234; United States Life Ins. Co. v. Lesser, 126 Ala. 568, 28 So. 646; National Life Ins. Co. v. Reedy, 217 Ala. 114, 115 So. 8; Reliance Life Ins. Co. v. Sneed, 217 Ala. 669, 117 So. 307; Manhattan Life Ins. Co. v. Parker, 204 Ala. 313, 85 So. 298.

■ "The weight of authority supports the proposition that an insurance company waives, *or is estopped to assert, a violation of the terms of an insurance contract* if the company, on being notified of the violation, remains silent and fails to object or to declare a forfeiture or cancel or rescind the contract, within a reasonable time." (Italics supplied.)

Cooley's Briefs on Insurance (2d Ed.) vol. 5, 4290.

In the instant case the company not only failed to object, or to declare a forfeiture or cancel or rescind the contract within a reasonable time after being duly and fully advised of the alleged breach, but, with such notice and knowledge, it demanded and accepted payment of two annual premiums accruing thereafter upon said policy.

What was said in the case of Phœnix Mut. Life Ins. Co. v. Raddin, 120 U. S. 183, 7 S. Ct. 500, 506, 30 L. Ed. 644, is here very much in point. It was there said by the United States Supreme Court, in an opinion by Justice Gray: "It follows that the only question upon the instructions of the court to the jury which is open to the defendant on this bill of exceptions is whether, if insurers accept payment of a premium after they know that there has been a breach of a condition of the policy, their acceptance of the premium is a waiver of the right to avoid the policy for that breach. Upon principle and authority, there can be no doubt that it is. To hold otherwise would be to maintain that the contract of insurance requires good faith of the assured only, and not of the insurers, and to permit insurers, knowing all the facts, to continue to receive new benefits from the contract while they decline to bear its burdens. [Globe Mut. L.] Insurance Co. v. Wolff, 95 U. S. 326 [24 L. Ed. 387]; Wing v. Harvey, 5 De Gex M. & G. 265; Frost v. Saratoga Mut. Ins. Co., 5 Denio [N. Y.] 154 [49 Am. Dec. 234]; Bevin v. Connecticut Mut. Life Ins. Co., 23 Conn. 244; [Lycoming Mut.] Ins. Co. v. Slockbower, 26 Pa. 199; Viele v. Germania Ins. Co. 26 Iowa, 9 [96 Am. Dec. 83]; Hodsdon v. Guardian Life Ins. Co., 97 Mass. 144 [93 Am. Dec. 73]."

Very much in point here is the case of New York Life Ins. Co. v. Dumler, decided by the Court of Appeals of the United States, Fifth Circuit, and reported in 282 F. pages 969, 973. The facts in the Dumler Case, supra, are strikingly similar to the facts in the case now before us; and the reasoning in that case appeals to us as being sound. In that case the company made demand for payment of the second premium on January 24, 1920, after receipt of notice of assured's claim to have been permanently disabled from February 2, 1919, a time antedating the issuance of the policy. The company received the premium money on February 20, 1920, and remained silent to the assured until March 9, 1920. The court held upon these facts: "That the demand for payment of the second premium by the home office on January 24, 1920, after receipt of notice of the assured's claim to have been permanently disabled from February 2, 1919, its receipt of the premium by February 20, 1920, and its silence to the assured until March 9, 1920, the date when its

letter demanding rescission was presented to him by Gideon, operates as a waiver of the claim of invalidity on the ground that the policy had not been delivered during the good health of the assured."

"Waiver of a forfeiture though in the nature of an estoppel may be created by acts, conduct, or declarations insufficient to create a technical estoppel, and the courts, not favoring forfeitures, are inclined to grasp any circumstances which indicate an election to waive a forfeiture. Any acts, declarations or course of dealing by an insurer, with knowledge of facts constituting a breach of a condition in a policy, leading the person insured honestly to think if conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, estops the insurer from insisting on the forfeiture. * * * It is also a settled rule of law that where an insurer has knowledge entitling it to treat a policy as no longer in force, and thereafter it receives a premium on the policy, it is estopped to take advantage of the forfeiture. It cannot treat the policy as void for the purpose of defense to an action to recover for a loss thereafter occurring, and at the same time treat it as for the purpose of earning and collecting further premiums." 14 R. C. L. 1181, 1190.

In the case of Queen Ins. Co. v. Young, 86 Ala. 424, 5 So. 116, 118, 11 Am. St. Rep. 51, this court held: "A waiver may be created by acts, conduct, or declarations insufficient to create a technical estoppel. If the company, after knowledge of the breach, enters into negotiations or transactions with the assured, which recognize and treat the policy as still in force, or induces the assured to incur trouble or expense, it will be regarded as having waived the right to claim the forfeiture; but notice or knowledge of the breach is essential to a waiver." In the instant case the appellant had notice of the breach of the good health clause, and with that notice at hand, and in its possession, it elected to treat the policy of insurance as a valid and subsisting contract by calling for and accepting from the insured premiums thereafter falling due.

An application of the foregoing principles of law to the facts in this case leads us to the conclusion that the appellant was not entitled to a decree cancelling the policy of insurance issued by it to the said W. W. Dunckley, and that the chancellor correctly so decreed.

■ In reaching our conclusion we do not wish to be understood as holding that notice to Cox, the local agent of appellant, with authority only to solicit insurance, deliver policies, and to collect premiums, was notice to the company. His authority and duties were not such as to impute notice to his principal because of his notice or knowledge. Queen Ins. Co. v. Young, 86 Ala. 424, 5 So. 116, 11 Am. St. Rep. 51; Bankers' Credit Life

Ins. Co. v. Ayres, 223 Ala. 407, 137 So. 23; North Carolina Mutual Life Ins. Co. v. Kerley, 215 Ala. 100, 109 So. 775; Powell v. Prudential Ins. Co., 153 Ala. 611, 45 So. 208; Mass. Mut. Life Ins. Co. v. Crenshaw, 186 Ala. 460, 65 So. 65. But the evidence in the case abundantly shows that long before the appellant demanded and received the payment of the second annual premium on the policy, it had full notice or knowledge of the breach of the condition of the policy now asserted, as grounds upon which to base its contention for the cancellation of the policy contract.

It follows that the decree appealed from is due to be, and is, affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.