155 So. 702

**PENN MUT. LIFE INS. CO. v. FIQUETT.**

5 Div. 170.

Supreme Court of Alabama.

May 17, 1934.

Rehearing Denied June 28, 1934.

Cabaniss & Johnston and L. D. Gardner, Jr., all of Birmingham, and Lawrence F. Gerald, of Clanton, for appellant.

☞For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

Huddleston, Glover & Jones, of Wetumpka, G. C. Walker, of Clanton, and Steiner, Crum & Weil, of Montgomery, for appellee.

BROWN, Justice.

This is an action of assumpsit by the beneficiary named in an "ordinary life policy, annual dividend," issued by the defendant to William Fiquett, on the 18th of September, 1916, in consideration of a premium of $57.90

paid on the date of the issuance of the policy, and an agreement to pay a like sum on each anniversary of the policy.

The evidence is without dispute that the annual premiums were paid on the policy up to and including the premium due September 18, 1926, but the insured failed to pay the premium due September 18, 1927. On the date of the default in payment of the last-mentioned premium, there was an indebtedness of $268.84 due from the insured to the insurer, advanced as a loan under the loan clause of the policy.

The policy had a cash surrender value, as of said last-mentioned date, of $365.34, and had accredited to it a dividend of $17.54, making the total cash value of the policy $382.88.

The policy contained the following stipulations:

"VI. Loans. After three full years' premiums have been paid, the Company, at any time while this policy is in force, will advance, on proper assignment and delivery of this policy and on the sole security thereof, and in accordance with Sections VIII and IX hereof, a sum which, with interest thereon to the end of the current policy-year, shall be equal to, or at the option of the owner less than, the cash value at the end of the said year, which cash value shall be the full reserve on this policy and on any dividend additions thereto according to the American Experience Table of Mortality with interest at 3 per cent. The amount of such advance shall be reduced by any existing indebtedness on this policy and any unpaid balance of the current policy-year's premium. Interest on the advance will be at the rate of 6 per cent. per annum and shall be payable at the end of each policy-year, and this interest, if not paid when due, shall be added to the existing indebtedness, provided the total indebtedness would not then exceed the cash value, and the indebtedness thus created shall bear interest at the same rate. The indebtedness or any part thereof may be repaid to the Company at any time. Failure to repay any such advance or to pay interest thereon shall not void this Policy unless the total indebtedness herein with interest shall equal or exceed the cash value at the time of such failure, in which case there shall be no liability under this Policy; *provided however that no such termination shall be effective until one month after notice shall have been mailed by the Company to the last-known address of the insured and of the assignee, if any, of record at the Home Office of the Company.* All indebtedness on account of this Policy, with ac-

crued interest, shall be deducted from any settlement hereunder. [Italics supplied.]

"VII. Non-Forfeiture. If this Policy shall lapse through non-payment of premium after three years' premiums have been paid, the Company will secure to the owner thereof a form of insurance, the net value of which shall be equal to the full reserve on this Policy and on any dividend additions thereto at the date of default, according to the American Experience Table of Mortality, with interest at 3 per cent., less any existing indebtedness to the Company on this Policy. At the end of the third and succeeding years the cash value is the full reserve, and the paid-up and extension values are the equivalents thereof. The stipulated values of this Policy shall be correspondingly increased for any fractional portion of a year's premium which has been paid. This nonforfeiture value shall be secured to the owner of this Policy through one of the following provisions:

"First:—The automatic extension without participation of the net amount insured by this Policy for the number of years and days stated below, at the expiration of which time the insurance shall cease; or,

"Second:—The issue of paid-up participating insurance payable at death for the sum provided for below upon written application therefor by the owner of this Policy and the legal surrender of all claims hereunder to the Company at its Home Office within one month after lapse; or,

"Third:—The payment, in accordance with Sections VIII and IX hereof, of the cash surrender value provided for below on surrender of this Policy and all claims hereunder to the Company within one month from the date, of lapse. * * *

"Should any indebtedness exist, it shall be deducted from the cash value of this Policy; the amount of the paid-up insurance shall be reduced in the same proportion as the cash value is reduced; or in case of lapse the extended insurance shall be for the face of this Policy less the indebtedness and for such a term as said reduced cash value will provide.

"The cash value of any paid-up or extension granted upon the lapse of this Policy will be the full reserve at the time of surrender, less any indebtedness to the Company under this Policy, and will be paid to the owner thereof upon proper release."

The insured did not make written application for "paid-up insurance" under option "Second," nor for payment of the cash surrender value as provided in option "Third." The insurer, however, credited the cash value of the policy with the indebtedness, leaving a balance of $114.84 to be applied under option "First" to extended insurance.

If, under the facts of this case, the stipulations of paragraphs VII and IX are applicable, the effect of these provisions, in the absence of efficacious exercising of one of the other options, was to automatically extend the insurance for a term of five years and twenty-six days, up to and including October 14, 1932. The insured died on April 28, 1933.

Appellant's contention is that under the facts of this case, as shown by the undisputed evidence, the policy lapsed on September 18, 1927, because of the failure of the insured to pay the annual premium then due, and in the absence of an election by the insured to exercise one of the other options, the stipulations contained in the first option automatically extended the insurance for the term of five years and twenty-six days, at the expiration of which the insurance under the policy ceased.

The appellee, on the other hand, contends that under the terms of the contract expressed in paragraph VI, governing loans, that paragraph having been put in operation by the loan obtained thereunder by the insured, the insurance could not be terminated "until one month after notice shall have been mailed by the company," as provided for in the italicized proviso of paragraph VI, citing in support of this contention, Protective Life Ins. Co. v. Thomas, 223 Ala. 106, 134 So. 488.

The cited case involved a paid-up policy, and the controlling question presented in that case was whether or not the insurer could successfully claim a forfeiture of the insurance without strict compliance with the loan agreement under which it claimed such forfeiture. The question of the lapse of the policy for nonpayment of premiums was not there involved. The notice stipulated for in the loan clause of the policy there, as here, related to the condition when the loan with accrued interest equals or exceeds the cash surrender value, and that situation is not presented in this case.

The next contention of the appellee is that there is in the policy contract no provision for its termination in the event of nonpayment of premiums, and therefore paragraphs VII and IX were inoperative. This contention ignores the stipulation in the

"First" option, "*at the expiration of which time the insurance shall cease.*" (Italics supplied.) This stipulation is, of course, as much a part of the policy contract as is the agreement to pay the insurance, on due proof of death, and all that was necessary to put it in operation was the nonpayment of the annual premium when due and the failure of the insured to elect a settlement under one of the other options, within the time provided for such election. Meridian Life Ins. Co. v. Hobbs, 200 Ala. 487, 76 So. 429, L. R. A. 1918A, 904; Scheuer, Wise & Co. v. New York Life Ins. Co., 203 Ala. 127, 82 So. 157.

▉ In the absence of statute, stipulation in the policy contract, or established course of dealing, the insurer is under no obligation to give notice of lapse of the policy on nonpayment of premiums. Alabama National Life Ins. Co. v. Smith, 214 Ala. 585, 108 So. 524; Bach v. Western States Life Ins. Co. (C. C. A.) 51 F.(2d) 191.

The next contention of appellee is that there was in the hands of appellant, after paying the loan, the sum of $114.84, available for the payment of premiums on the policy, and it was the duty of the insurer to apply this to the payment of premiums and prevent a lapse of the policy. To support this contention Equitable Life Assur. Soc. of United States v. Roberts, 226 Ala. 11, 145 So. 157, is cited. It is a sufficient answer to this contention that such application would have carried the policy for less than two years, and the death of the insured occurred in the sixth year after he failed to pay the premium due September 18, 1927.

Another answer to this contention is, in the absence of an election by the insured to settle under the second and third options, the first option automatically applied the surplus of the cash surrender value to extended insurance, and this kept the policy alive, up to and including October 14, 1932, when, according to the express provisions of the policy, it terminated.

▉ The death of the insured not having occurred within the life of the policy, the plaintiff was not entitled to recover, and the court erred in giving the affirmative charge in his favor, and in refusing a like charge requested by the defendant.

For these errors the judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.

### On Rehearing.

BROWN, Justice.

The appellant contends that the pronouncement of the foregoing opinion is in conflict with the holdings of the court in Equitable Life Assurance Society of U. S. v. Golson, 159 Ala. 508, 48 So. 1034; Manhattan Life Ins. Co. v. Parker, 204 Ala. 313, 85 So. 298, 302; and North Carolina Mut. Life Ins. Co. v. Terrell, 227 Ala. 410, 150 So. 318, 320, 89 A. L. R. 1459.

The pertinent doctrine of those cases is: "That the failure to pay the premium on an insurance policy does not, *of itself*, forfeit the contract, unless the policy so provides." The policy dealt with in the case first cited contained no such express provision, but contained a provision that: " 'If premiums upon the policy for not less than three complete years of assurance shall have been duly received by the society, and default shall be made in the payment of a subsequent premium, the policy may be surrendered for a nonparticipating paid-up policy, *for the entire amount which the full reserve on the policy* * * * will then purchase as a single premium, calculated by the regular table for single-premium policies, now published by the society, providing that the policy be returned to the society duly receipted *within six months* after the date upon which the last premium in default has fallen due; otherwise, the policy shall cease and determine, and all premiums paid thereon shall forfeit to the society.' " (Italics supplied.) Equitable Life Assurance Society of U. S. v. Golson, 159 Ala. 508, 511, 48 So. 1034, 1035.

*The insured died within the six months allowed for the exercise of the option*, and the court held that this clause did not provide for a forfeiture of the policy inside of six months after default in the payment of the premiums, unless the insured during that time surrendered the policy and got a paid-up one under the terms of the contract, and thus released himself from liability for unpaid premiums, to use the language of the opinion, "In other words, the clause means that after default in any premium, after the third one, the insured has six months within which to elect to surrender the policy and get paid-up insurance, to the extent of what he has paid in, or to pay the premium, should he decide not to surrender the policy, and when he has failed to so elect, notwithstanding the premium is unpaid, the policy does not become forfeited *for* six months after said premium becomes due." Equitable Life

Assurance Society of U. S. v. Golson, 159 Ala. 508, 511, 512, 48 So. 1034.

In Manhattan Life Ins. Co. v. Parker, supra, while the doctrine of the Golson Case, supra, was restated, the holding was: (1) That in the absence of a provision in the policies that failure to pay notes for past-due premiums would forfeit the policies, a provision in such notes to that effect was "vain" and abortive; and (2) "Such right as the insurer had to forfeit and annul these policies accrued on Parker's failure to pay the second premiums maturing on April 19, 1914. It appears from the agreed statement of facts that approximately 46 days after that date, on June 5, 1914, the company accepted from Parker $51.60 in cash and $12.80, resulting from dividends on these policies, 'which was credited,' as the agreed statement recites, 'as a payment on said second premium on each of said policies'; and also accepted the several notes described in the quotation ante from the agreed statement. This action was a distinct waiver of the possible forfeiture that accrued, if at all, prior to June 5, 1914. The waiver thus effected was thereafter beyond recall;" that such payment carried the policies beyond the date of Parker's death. Manhattan Life Ins. Co. v. Parker, 204 Ala. 313, 317, 85 So. 298.

In Terrell's Case, supra: "The policy had been in force for more than six years when the insured died, on January 3, 1932, but there was default on the premium due November 14, 1931. Under the 'nonforfeiture provisions' of the policy insured had the right (three full annual premiums having been paid) within three months after default in payment of any premium to exercise certain options therein provided. But he died within the three-month period without having made any election as to such options." The court held that the policy, taking all its provisions together and applying the rule of reasonable construction, continued in force for three months after the default in the payment of the premium, and inasmuch as the death occurred within that period, the contention of the insurer that the policy had lapsed except as to the paid-up insurance purchasable by the reserve was without merit, and differentiated the case from Landis v. Metropolitan Life Insurance Company, 104 Ohio St. 589, 136 N. E. 193, 26 A. L. R. 98, "where the insured died after the expiration of the three months and without having exercised his option."

Appellant's insistence is, to be exact, that the nonforfeiture provisions of the policy were left dormant by their own terms that "if this policy shall lapse through non-payment of premiums after three years' premiums have been paid," and, therefore, although the insured defaulted in the payment of the premium due September 18, 1927, and the subsequent premiums due, annually for the succeeding five years before his death, yet the policy continued in full force, and that plaintiff, the beneficiary named, should be allowed to recover its full face value.

■■ Courts, in the interpretation of contracts, seek to ascertain the intention of the parties, and where it is ambiguous and of doubtful meaning, doubt will be resolved against the party preparing and issuing the obligation, yet the construction must be reasonable, not arbitrary, and the court will look to all the provisions and the object to be accomplished. The interpretation contended for by the appellant is not reasonable, and to so interpret the contract before us would be to make a contract into which the parties did not intend to enter.

In the case at bar the insured did not die within the period provided for an election between the several options, and made no election. The holding of the opinion is not that the default in the payment of the premium, of itself, terminated the liability, but applying the rule of reasonable interpretation, the legal effect of such default and the failure of the insured to elect put in operation the "non-forfeiture provisions" extending the insurance in a reduced amount for a term which expired before the death of the insured.

Application overruled.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.