160 So. 332
**NEW YORK LIFE INS. CO. v. CRUMPTON.**
7 Div. 309.

Supreme Court of Alabama.
March 21, 1935.

Frank Head, of Columbiana, and Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

**148**

L. H. Ellis and W. W. Wallace, both of Columbiana, for appellee.

GARDNER, Justice.

Plaintiff was the named beneficiary in a life insurance policy issued in June, 1929, by defendant company on the life of Farris L. Crumpton, and the appeal is from a judgment in her favor on suit brought thereon.

The insured died on November 28, 1932. The policy had undisputedly lapsed by nonpayment of the quarterly premium due December 4, 1931, but was reinstated by defendant on January 19, 1932. Plaintiff's right of recovery therefore rests upon the binding force of this reinstatement. The policy contains the following stipulation: "The policy and the application therefor, copy of which is attached thereto, constitute the entire contract. * * * No agent is authorized to make or modify this contract, or to extend the time for the payment of premiums, or to waive any lapse or forfeiture, or any of the company's rights or requirements."

Upon the matter of reinstatement, here more pertinent, the policy provides as follows: "*Reinstatement.*—This policy may be reinstated at any time within five years after any default, upon written application by the insured and presentation at the Home Office of evidence of insurability satisfactory to the company and upon payment of overdue premiums with six per cent interest thereon from their due date. Any indebtedness to the company at date of default must be paid or reinstated with interest thereon in accordance with the loan provisions of the policy."

There is a recognized difference in the relation between the parties to an insurance contract when application is made in the first instance for a policy, and when after its issuance application is made by the insured for its reinstatement following a lapse. Refer-

ring to this difference the Wisconsin court in Leonard v. Prudential Ins. Co., 128 Wis. 348, 107 N. W. 646, 116 Am. St. Rep. 50 (quoted approvingly in Prudential Ins. Co. v. Union Trust Co., 56 Ind. App. 418, 105 N. E. 505, 510) says: "So the relations between the parties to the insurance contract when the assured made his application to revive the same were not, by any means, the same as those between an applicant for a policy in the first instance and the company applied to, as appellant's counsel contend. In the latter the application could be rejected at the pleasure of the company; the attitude of the applicant being that of one offering to take from another that which such other is not under any legal obligation to deliver. In the case in hand the attitude of applicant was that of one demanding a right which, upon the conditions precedent in the contract to its ripening into a complete obligation, it was not within the power of appellant to successfully withhold."

And in Mutual Life Ins. Co. v. Lovejoy, 203 Ala. 452, 83 So. 591, the holding was that the matter of reinstatement, upon compliance with conditions imposed, was a right based on the policy contract enforceable in a court of equity, and that the insurer had no right to impose or add other conditions to the right of reinstatement than those contained in the contract. Conversely, of course, the insured must meet the requirements of his policy contract as a condition to his right of reinstatement.

Upon the determination of that question hangs the fate of this appeal.

These requirements were (aside from premium payment) that the insured, within five years after any default, make written application and presentation at the home office of evidence of insurability, satisfactory to the company. Under the undisputed proof, insured could not in truth have offered evidence of insurability, for he was in June, 1931, suffering from tuberculosis, a disease which this court judicially knows does materially increase the risk of loss. Brotherhood of Rwy., etc., Employees v. Riggins, 214 Ala. 79, 107 So. 44. This condition appears to have continued to the end, with intermittent periods of apparent improvement, and with the insured having consulted two physicians. In June, 1932, insured made claim for disability benefits, in accordance with the terms of the policy on the ground that he was totally and permanently disabled. It was in the course of the investigation of this claim that the defendant company first learned of the misrepresentation practiced upon it in the application for reinstatement, favorably acted upon in January, 1932. Thereupon both the insured and the named beneficiary were notified that the reinstatement of the policy was rescinded and tendered all premiums with interest subsequently paid.

Insured's application for reinstatement appeared upon its face entirely regular and answers as to condition of health satisfactory. It therefore met the approval of the cashier Campbell in the Birmingham office, who had supervision over the matter, and whose indorsement sufficed for the reinstatement. The application for reinstatement with indorsement thereon is as follows:

"Application to the New York Life Insurance Company

"Home Office: 51 Madison Avenue, Madison Square, New York, N. Y.

"For reinstatement of policy No. 10,671,387 amount $1,000.00

"I hereby apply for the reinstatement of the above numbered policy which lapsed for non-payment of the premium due on the 4th day of December 19 — and for the purpose of inducing the company to reinstate said policy, I make the representations contained in my answers to the following questions:

"1. Are you now, to the best of your knowledge and belief, in the same condition of health as you were when this policy was issued? (If not, give full details.) — Ans. Yes.

"2. Within the past two years have you had any illness, diseases, or bodily injuries or have you consulted or been treated by any physician or physicians? (If so, give full details, including nature, date and duration of each illness, disease or injury, the name of each physician, and the dates of and reasons for each consultation or treatment.) — Ans. No.

"3. Has any company or insurer, within the past two years, examined you either on or in anticipation of, an application for life insurance, WITHOUT issuing or reinstating such insurance? (If so, give name of each company or insurer.) — Ans. No.

"If the evidence of my insurability is satisfactory to the company and it has received all sums the policy requires to be paid for

reinstatement, then, and not until then, said policy shall be deemed reinstated. If said policy is not so reinstated, I agree to accept return of all sums paid in connection with this application, without interest.

"I hereby certify that the foregoing answers are full, complete and true, and agree that the company believing them to be true shall rely and act thereon.

"Dated at Columbiana, Ala., Rt. 1, this 16th day of January, 1932.
"Signature of Insured Farris L. Crumpton.
   "My Post-Office Address is:
      "Columbiana, Ala., R—F—D 1.
      "c/o W. B. Crumpton.
"Witness L. B. Riddle
"Address Columbiana, Ala.,

| Received | "Approved by R. W. |
| Birmingham Branch | Campbell, Cashier on |
| Jan. 16, 1932. | the —— day of —— |
| N. Y. Life Ins. Co. | 19 —— |
| Ans'd. —— | Bir. Jan. 19, 1932." |

As hereinbefore indicated, answers 1 and 2 were undisputedly false and were most material, constituting a gross imposition upon the defendant insurer. This, plaintiff does not deny, but he insists the fraud was that of the local agent without participation or collusion on his part or that of the beneficiary, and that under the decisions cited (National Life & Accident Ins. Co. v. Baker, 226 Ala. 501, 147 So. 427; First Nat. Life Ins. Co. v. Rector, 225 Ala. 116, 142 So. 392; Life & Casualty Ins. Co. v. Waldrop, [Ala. App.] 153 So. 656), such fraud is not available as in defense of the policy.

Defendant in effect replies that those cases deal with application for insurance in the first instance, and not with the matter of reinstatement involving certain requirements on plaintiff's part under the policy contract as conditions precedent to reinstatement, and that the rule is applicable that as plaintiff must rest upon the application he cannot adopt the part thereof favorable and repudiate that unfavorable, citing as sustaining this view, New York Life Ins. Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934; American Nat. Ins. Co. v. Few, 224 Ala. 576, 141 So. 234. Defendant presses other reasons as in defense of plaintiff's claim.

But, as we view the case, a cause more fundamental bars plaintiff's recovery, and the above noted contention may be left to one side and undetermined. We refer to the matter of the application itself. Clearly the primary requirement of the contract for reinstatement was the written application of the insured. It must be from the insured himself. The insurer was entitled to know his desire for reinstatement and whether or not he was insurable from a health standpoint. But the application here was not signed by the insured, though his name appears as if he himself had executed it. The local agent permitted the father of insured—a stranger to the policy contract from a legal standpoint—to make the application and answer the questions therein contained. The father insists he answered the questions correctly—the first in the negative and the second in the affirmative—all of which would have disclosed the true condition of insured's health, but that the local agent made the answers in direct opposition to his statements.

But to recur to the matter of the application being signed by the father, plaintiff insists her proof was sufficient to show the father was acting as agent for the insured, though the signature gave no such indication. In support of authority to sign the application for reinstatement, plaintiff rests upon testimony of the father to the effect that when insured left his home he directed that he "keep the policy paid up * * * see after it for him and keep it in force * * * write me for the money, and I will send it to you," and that the policy was left with him for that purpose. This proof would seem to indicate that no lapse of the policy was in the mind of the insured, but that he was merely looking to his father to keep the premiums paid, and we are much inclined to the view that to construe this testimony as giving authority to make and sign in the name of the insured an application for reinstatement of a lapsed policy would be giving to his language too extended a meaning.

But conceding, for the purposes of this case only, the sufficiency of the proof in this regard, the questions recur as to the true meaning of the policy contract wherein is the stipulation for its reinstatement "upon written application by the insured." We are of the opinion this means a written application by the insured himself, and not through another acting in his stead.

We are, of course, mindful of the well-recognized rule that doubtful language in insurance policies is to be construed most favorably to the insured, but this rule, as has been well said, is not to be carried to the extent of construing such a contract contrary to the manifest intention of the parties, for

such intention is the "pole star" of all rules of construction. Moore v. Bankers' Credit Life Ins. Co., 223 Ala. 373, 136 So. 798; Louis Pizitz Dry Goods Co. v. Fidelity & Deposit Co., 223 Ala. 385, 136 So. 800.

But the purpose of the requirement that the written application be by the insured himself is so manifest and reasonable as well as essential to an intelligent consideration thereof by the insurer, that we would consider a contrary construction strained and clearly in opposition to the clear intent of the parties. The present case serves as a very definite illustration. The father signs the insured's name to the application which states that for the purpose of inducing the company to reinstate the lapsed policy, certain representations are made, the first of which is that the health of the insured is in the same condition as when the policy was issued. The insured was absent from his father's home and had been for some months at the time this application was signed. The father states he did not read the application, nor was it read to him. He could not, of course, have definitely known of the state of health of the insured. These were matters for the insured himself to answer. They were of the highest importance, and the insurer had every reason to anticipate that the insured, and no one else, would make such application, and had no reason to suspect otherwise. The application concerned a matter personal and intimate to the insured, and concerning which he would certainly be expected to have a better knowledge than some one else acting in his stead. And the reasoning for such construction is emphasized when it is considered that the policy contract permitted a reinstatement any time within a period of five years. And if the father in the instant case could act for the insured, and make application and furnish proof as agent for the insured after an absence of a few months, he would have the same right had his absence continued for a period anywhere short of five years. The length of time, of course, could make no difference in principle, though the illustration serves to disclose the unreasonableness of a contrary construction of the policy contract. Though not directly here in point, yet we consider the following authorities lend support to the view that the written application was to be made by the insured himself, and no one else. Carrigan v. Mass. Benefit Ass'n (C. C.) 26 F. 230, 233; McElwain v. Metropolitan Life Ins. Co., 33 App. Div. 60, 53 N. Y. S. 253.

But more important, we think such a construction supported by reason and common sense, and more nearly expresses the intention of the parties. Had the application disclosed that the insured's name was signed by another, it could not be doubted it would have proved unsatisfactory to the insurer, and, indeed, the proof is that the supervising agent at the Birmingham office would not have had authority to give approval to such application. Though appearing regular and in due form upon its face as being the application of the insured himself, yet, as said in the Carrigan Case, supra, it was "not the application of the assured, except in appearance. It is a deceptive pretense."

But plaintiff insists further that the local agent knew all of this, and also had knowledge of insured's sickness, which was binding upon the company. But the agent was merely one with authority to solicit insurance, deliver policies, and collect premiums, and under our decisions he had no power to waive this condition in the face of contractual stipulations to the contrary, and his knowledge of the facts is not of binding force on defendant company. Southern States Life Ins. Co. v. Dunckley, 226 Ala. 588, 148 So. 320; North Carolina Mut. Life Ins. Co. v. Kerley, 215 Ala. 100, 109 So. 755; First Nat. Life Ins. Co. v. Rector, 225 Ala. 116, 142 So. 392; Bankers' Credit Life Ins. Co. v. Ayres, 223 Ala. 407, 137 So. 23.

We are persuaded under the undisputed proof defendant had the right and promptly exercised it, to rescind the reinstatement of the lapsed policy, and that it, rather than plaintiff, was entitled to the affirmative charge as duly requested.

The judgment is accordingly reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.