164 So. 742

**SOVEREIGN CAMP, W. O. W., v. MILLER.**

**4 Div. 839.**

Supreme Court of Alabama.

Dec. 19, 1935.

Tompkins & Ramsey, of Dothan, for appellee.

Harry K. Martin, of Dothan, for appellant.

THOMAS, Justice.

The appeal is from a judgment on the pleadings and an agreed statement of facts. This proceeding was under the amendment of section 6095 of the Code; General Acts 1931, p. 409. Wofford Bond & Mortgage Co. v. Armour, 228 Ala. 406, 153 So. 860.

The pertinent provisions of the policy here involved are: No. 3, the "Automatic Premium Loan" clause, and "Cash Surrender, Paid-up and Extended Insurance, and Loan Values" under table A. The table of "Cash Surrender, Paid-up and Extended Insurance, and Loan Values" is set out in extenso as a part of count 2, and aids that pleading.

The assured under the policy died on May 28, 1934, and that instrument was payable to his estate, and his administrator sues.

The gravamen of the complaint is, that at the end of August, 1933, the policy of insurance had a cash value of $551.34, notwithstanding a loan of $469.34 had been made to assured in October, 1932; that at the beginning of October, 1933, the cash value of the policy (allowing for the loan) was sufficient to maintain in force the policy to and including the month of May, 1934, and up to and including the date of the death of assured. Such are plaintiff's insistences.

The defense set up and relied upon in the pleas is, that the assured was indebted to the insurer (appellant) in the sum of $469.34, which left a balance in the "Cash Reserves" of only $82 available for the maintenance of the certificate of insurance. It is averred in the pleas that in addition to the monthly installments of $13.68 paid out of the aforementioned $82, the assured owed appellant the sum of $2.35, monthly interest on said loan; and after applying the balance of $82 in the "Cash Reserves" in payment of the $13.68 each month and monthly interest of $2.35, the $82 balance was exhausted, and under the terms of the policy or certificate it became null and void on February 1, 1934; that is, the $82 "Cash Reserves" was sufficient to extend

the contract in force for five months only; from September 1, 1933, to February 1, 1934.

The agreed statement of facts reads in part as follows:

"It is mutually agreed between the parties to this cause that this statement of facts be submitted to the Court as the facts in the case, for the Court to render its judgment thereon.

"That the defendant issued its beneficiary certificate to Early L. Dowling, a typewritten copy of which is attached to plaintiff's amended complaint; that the said Early L. Dowling paid his monthly assessments of $13.86 required to be paid by him to maintain his certificate in force for the last time, for the month of August, 1933, and defaulted by reason of his failure to pay the September 1933 installment, and that no subsequent installments were paid by or for him on the certificate; that the cash surrender value of the certificate on September 1, 1933, was $551.34, and that said cash surrender value less all loans together with interest, was sufficient to pay the installments for the months of September, October, November and December 1933 and January 1934, and no more, unless plaintiff's theory is correct.

"That the said Early L. Dowling had borrowed from the defendant the sum of $469.34, which he had not repaid and still owed that amount at the time of his death; that the amount of interest due on said loan was $2.35 per month; that the amount of said indebtedness together with the interest thereon, subtracted from the cash surrender value of said policy in the sum of $551.34, left a balance to the credit of the said Dowling in the sum of $82.00, which was sufficient to pay his installments for the months of September, October, November and December 1933 and January 1934, and no more, unless plaintiff's theory is correct. It is further agreed that the defendant used said balance of $82.00 for the purpose stated under the Automatic Premium Loan provision of the policy and that when the five months just named were paid for under said provision of the policy, said $82.00 was exhausted.

"It is further agreed that if in advancing the installments under the Automatic Premium Loan, the cash surrender value was increased or advanced, there was a sufficient amount by reason of the increase or enhancement to have maintained the

certificate in force until the date of the death of the insured, that said amount was sufficient to pay all the installments or assessments up to and including the month of April, 1934, the deceased having died in May, he would not have been required to pay the May installment."

It is apparent that the question for decision is whether or not such payments of the monthly assessments by the insurer for the insured, under the provisions of the automatic premium loan provision of the certificate or policy, increased its cash value correspondingly, or only extended the policy to February 1, 1934?

■ There are certain rules of construction that are established as to life insurance policies, viz., where there are repugnant conditions in the policy or certificate, such as are in favor of the insured, will be enforced to prevent a forfeiture (North Carolina Mut. Life Ins. Co. v. Terrell, 227 Ala. 410, 150 So. 318, 89 A.L.R. 1459); that every reasonable intendment in a life policy must be resolved in favor of the insured (Equitable Life Assur. Soc. of United States v. Roberts, 226 Ala. 8, 145 So. 157; Independent Life Ins. Co. v. Vann, 24 Ala.App. 93, 130 So. 520); that forfeitures are construed most strongly against the insurer (Continental Casualty Co. v. Ogburn, 175 Ala. 357, 57 So. 852, Ann.Cas. 1914D, 377; Mutual Life Ins. Co. of New York v. Lovejoy, 201 Ala. 337, 78 So. 299, L.R.A. 1918D, 860); and that forfeitures for nonpayment of premiums are not favored in law (Manhattan Life Ins. Co. v. Parker, 204 Ala. 313, 85 So. 298; North Carolina Mut. Life Ins. Co. v. Terrell, supra). That is to say, contracts of insurance are liberally construed in favor of the assured, and if equivocal or doubtful in the words, expressions, and provisions employed, such contracts are construed against the insurer; this rule having been applied especially to forfeiture clauses of policies. Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 82 So. 175; Equitable Life Assur. Soc. of United States v. Roberts, supra; McGifford v. Protective Life Ins. Co., 227 Ala. 588, 151 So. 349. It is likewise well established, that if such contracts are unambiguous they will be enforced as written; there being no room for construction. McGifford v. Protective Life Ins. Co., supra;

New York Life Ins. Co. v. Torrance, 224 Ala. 614, 141 So. 547; 13 Corpus Juris, page 541, § 513; Union Central Relief Ass'n v. Johnson, 198 Ala. 488, 73 So. 816. This is the saying, that if such contract is not of doubtful meaning, then the construction may not be against the manifest intention of the parties. Protective Life Ins. Co. v. Hale, 230 Ala. 323, 161 So. 248; New York Life Ins. Co. v. Crumpton, 230 Ala. 147, 160 So. 332, 335; Columbian Mut. Life Ins. Co. v. Vasser, 230 Ala. 284, 160 So. 696.

■ The question recurs: Is there a repugnance between the automatic premium loan clause, providing, "If there be any indebtedness against this certificate, the cash surrender value set forth in Column 1 of Table A on page 3 hereof shall be reduced thereby, and the value of the options abovenamed shall be decreased proportionately. * * * After thirty-six monthly payments on this certificate shall have been paid, if any subsequent monthly payment be not paid on or before its due date, and if the member has not, prior to such due date, selected one of the options available under the non-forfeiture provisions of this certificate, the Association will, without any action on the part of the member, advance as a loan to the said member the amount of the monthly payments required to maintain this certificate in force from month to month until such time as the accumulated loans, together with compound interest thereon at the rate of five per cent per annum, and any other indebtedness hereon to the Association equal the cash value hereof at the date of default in the payment of the monthly payments. When the said cash value has been consumed in loans advanced and interest thereon, then this certificate shall become null and void," and the provision in the cash surrender, paid-up and extended insurance, and loan values clause under table A, which provides: "In the actual application of the values printed in this table, consideration will be given to that portion of the year's monthly payments paid over and above the full number of years indicated"? 

This question for decision is answered for the appellant in that the automatic premium loan clause does not provide for any enhancement or increase of the cash value of the reserve, as for certain other re-

serves; but it is specifically stipulated that when the cash value has been consumed in loans advanced and interest thereon, then this certificate shall become null and void. Such result was within the contemplation of the parties. The time extended to such period as the $82 would buy; but no other or additional reserve or cash value was created. Penn Mut. Life Ins. Co. v. Fiquett, 229 Ala. 203, 155 So. 702.

In the absence of election by the insured of other options secured by the policy, and default in payment of the premiums or assessments having occurred, as shown by the agreed statement of facts, or interest on the loan, the insured was only entitled to be credited with the $82 for the specific purpose of extending the policy according to its terms, and not otherwise. Mutual Benefit Life Ins. Co. v. Carter, 229 Ala. 679, 159 So. 217. To further illustrate: Had the insured died within this extension period, the company would have been liable for the net amount of insurance. According to the agreed statement of facts, the insured died beyond the period of extended insurance. It is contended by plaintiff that there was an increase in the reserve during the period of extension. Under such a contract, after the life insurance lapses, there can be no increase in the reserve on same, unless additional premiums are paid in cash, or additional interest on the loan is paid in cash. Without receiving additional cash from one of these sources the company cannot increase its reserve. Assuming the company accurately and equitably calculated (a) the remaining cash value at the time of the lapse, (b) the amount of accrued interest on indebtedness due, (c) the number of months and days of extended insurance that this remaining cash value purchased (and this data is stated in the agreed statement of facts), it follows that, the insured having died after the extended insurance had expired, there was no liability on the part of the company at the time of the insured's death.

The judgment of the circuit court is reversed, and judgment is here rendered for the defendant-appellant.

Reversed and rendered.

BOULDIN, BROWN, and KNIGHT, JJ., concur.