200 So. 883

WOODMEN OF WORLD LIFE INS. SOC.
v. RIED.

6 Div. 716.

Supreme Court of Alabama.

Feb. 27, 1941.

Rehearing Denied March 27, 1941.

Wm. B. McCollough, of Birmingham, for appellant.

Harsh, Harsh & Hare, of Birmingham, for appellee.

BOULDIN, Justice.

Appellee sued as beneficiary named in certificate of life insurance issued by appellant. The issues were presented under special pleas alleging a lapse of the policy for nonpayment of premiums.

Plea III alleged that the insured failed to pay the monthly instalment for the month of August, 1938, and paid no further instalments prior to his death March

11, 1939; that at the time of default the certificate had a cash value over and above outstanding loans in the sum of $43.91, sufficient to keep the certificate in force for the months of August to November, inclusive, 1938, and that thirty days thereafter, to wit, January 1, 1939, the certificate lapsed and became void.

Plea VI sets out certain provisions of the certificate, among them the Automatic Premium Loan clause, and alleges that upon default in payment of monthly premiums as alleged in plea III, automatic premium loans carried the insurance for the months of August to November, 1938, when the cash value of the policy was exhausted, and the certificate lapsed January 1, 1939, for nonpayment of the premium due for December, 1938.

The evidence for defendant presented the history of this certificate, issued in 1929, but dating back to 1926 in figuring cash and loan values; and by a series of calculations found the cash or loan value of the certificate as of August, 1938, to be $43.91. The monthly premium was $6.80, and monthly interest on existing loans was figured at $2.11, making a monthly charge under the automatic loan clause, $8.91, or $35.64 for four months, August to November, inclusive, leaving only $8.32 available to pay the December charges. Thus, it is figured, the policy lapsed January 1, 1939, because of a shortage of 59 cents in hand to meet the December charges.

Appellee questions these calculations in that the loan value available under the automatic loan clause is figured as of August, 1938, when payments in cash by the insured terminated.

This question was decided in Sovereign Camp, W. O. W., v. Miller, 231 Ala. 336, 164 So. 742. We there held the loan value should be figured as of the date when cash payments ceased, in that no additional reserve, or operating capital, became available from which cash or loan values could be increased. The Automatic Premium Loan stipulation is set out in the above decision.

Appellee invites a reconsideration of this opinion. It is argued that the table of loan values, increasing in this instance, some $4.17 per month, contemplates a continuous increase so long as the policy is in force; that by reason of the Automatic Premium Loan clause, there is no "default," and certainly no lapse of the policy as of the date cash payments cease.

Sovereign Camp, W. O. W., v. Easley, 188 Ark. 1012, 69 S.W.2d 273, and Barthel v. Sovereign Camp, W. O. W., 230 Mo. App. 247, 93 S.W.2d 285, support appellee's construction of these provisions. The Missouri case, supra, deals with the question at length, and disapproves our case of Sovereign Camp, W. O. W., v. Miller, supra.

De Almada v. Sovereign Camp, W. O. W., 49 Ariz. 433, 67 P.2d 474, 477, takes the same view as our Miller case, saying: "Did such loan value increase in value during the period in which the monthly premiums were paid therefrom in the same manner as it would had the insured paid the same in cash from his own funds? There is a greater division of authority upon this point than upon the previous one. Most of the cases which we have cited hold that it does; that, in substance, the situation is the same as though the insured had personally borrowed the full amount of the loan value from a third party, and then paid it on his premiums as they became due, in which case, of course, the reserve value of the certificate would have increased in the usual manner. We think, however, that the cases which so hold have overlooked the fundamental reason why cash surrender and loan values are allowed at all. This reason is, of course, that by the payment of insurance premiums the cash reserve of the company is increased and, in mutual companies at least, the policyholders, who in reality are the stockholders of the company, are entitled to whatever these assets amount to, after deducting the proper reserve to protect policies which are continued in force. When the company makes either a direct or an automatic loan from its assets to a policyholder, for the sole purpose of paying premiums, nothing is added to its reserves."

But do these automatic loans, bearing compound interest, secured by the cash value of the policy, yield the same income as though cash was paid in, and thus put the insurer in like position?

The necessities of this case do not require a reconsideration of the Miller case, since there is other evidence making a jury question on the issue of lapse vel non on January 1, 1939. This insured, Charles A. Ried, had carried this insurance for thirty years, had accepted new certificates on rerating basis. The monthly payment of

$6.80 had been met since 1929. He had been notified that the cash value would be exhausted and his policy would lapse January 1, 1939, unless he resumed making payments with the month of December, 1938; and on February 29, 1939, was advised of his privilege to reinstate on payment of arrears and furnishing certificate of good health.

But the record discloses other evidential facts.

On February 20, 1939, the insured wrote an appealing letter disclosing financial inability to do anything at present, and saying: "If there is any way that can be arranged to take care of my insurance I will appreciate it very much I would like for the Society to help me this much if it is possible I hate to lose the insurance I have had it so long."

On February 25, 1939, the president of the Society wrote the insured a fraternal and appreciative letter, and saying: "On account of economies effected in 1938, we are happily in position to make another refund to each of our members of over two years' standing, and yours is herewith enclosed."

Enclosed with this letter was the official check of same date for $9.11. The printed form designated same as "Refund Check—Distribution of Savings," and carried the signature of the president and secretary.

This check was issued pursuant to a resolution of the Board of Directors of November 17, 1938, reciting the Society had "funds available for the benefit of the members in excess of the amount to maintain the required reserves for all purposes and provide for the expense of operation of the Society," and proceeding: "Therefore be it resolved that every member of the Society who has paid at least two annual assessments or twenty-four monthly installments of assessments next preceding January 1st, 1939, and who is then living and whose certificate is in force on said date, shall receive a refund on the basis of seventy-five per cent of the schedule of refunds heretofore adopted, ratified and confirmed by this Board of Directors on January 30, 1937."

The resolution called for making up a schedule of refunds, and directed the president to cause refunds to be made on or about March 1, 1939.

This line of evidence tended to show: (1) That this policy was one in force January 1, 1939; (2) that funds, other than cash values, were available as of that date, already scheduled and allotted to this policy.

The insured having made request that the Society find a way, if possible, to keep his insurance in force, this line of evidence presented a case for the jury on both questions above noted. Equitable Life Assurance Soc. of United States v. Roberts, 226 Ala. 8, 145 So. 157; Higgins v. Sovereign Camp, W. O. W. 224 Ala. 644, 141 So. 562; Note, 92 A.L.R. 712.

We do not find merit in the insistence that the verdict of $1,617.03 was excessive.

True, the certificate loan, and all automatic premium loans, including those prior to May, 1938, with the interest thereon, to the date of maturity of the policy, were proper credits to be deducted from the face value of the policy $2,000, plus $75.84 due under special paid-up insurance certificate No. 71116, as we understand the evidence. We figure these loans and accrued interest at $558.40, leaving balance $1,517.44, with interest to date of verdict April 25, 1940.

We find no error to reverse in the rulings presented for review.

Affirmed.

GARDNER, C. J., and FOSTER and LIVINGSTON, JJ., concur.